CENTRAL TRUST CO. *v.* TEXAS & ST. L. RY. CO.[1]

*In re* WATERS PIERCE OIL CO., Intervenor.[1]

(*Circuit Court, E. D. Missouri.* April 8, 1885.)

1. RAILROAD LIENS—OILS—REV. ST. MO. § 3200, CONSTRUED.
   Lubricating and illuminating oils are not "materials," within the meaning of section 3200 of the Revised Statutes of Missouri, and parties furnishing them are not entitled to any statutory lien.

2. MORTGAGES—MATERIAL-MEN—EQUITABLE LIENS.
   Where materials necessary for use in the management of a railroad were furnished from time to time from October 17, 1882, to January 10, 1884, inclusive, and two notes were given for a part of the amount due therefor, dated, respectively, October 15, 1883, and December 12, 1883, both due four months after date, and the railroad defaulted in the payment of its bonded interest, September 1, 1883, and a receiver was appointed January 12, 1884, and the material-men filed their claim for the whole amount due, and surrendered their notes for cancellation, *held*, that they were only entitled to an equitable lien superior to that of the mortgagees, for the amount due for materials furnished after the railroad company's default.

Exceptions to Master's Report.

The claim of the intervenor in this case is for a balance of $2,861.91, due it for lubricating and illuminating oils furnished the Texas & St. Louis Railway Company, at various times from October 17, 1882, to January 10, 1884, inclusive. Two promissory notes executed by said railway company, on account of part of said indebtedness, one for $1,376.76, and dated October 15, 1883, and the other for $1,844.04, dated December 12, 1883, both payable four months after date,—were surrendered for cancellation. It was conceded that the oils were necessary for use in running the road. Default in the payment of interest took place September 1, 1883. A receiver was appointed January 12, 1884. The intervening petition was filed April 5, 1884. The intervenor claimed a lien under the Missouri Statutes, which provide (Rev. St. § 3200) that "all persons who shall do any work or labor in constructing or improving the road-bed, rolling stock, station-houses, depots, bridges, or culverts of any railroad company incorporated under the laws of this state, or owning or operating a railroad within this state, and all persons who shall furnish ties, fuel, bridges, or materials to such railroad company, shall have   *   *   *   a lien," etc. The master reported that the intervenor is not entitled to any lien under said statute, because oils are not materials, within its meaning; but is entitled to an equitable lien for all oils furnished since the railroad company defaulted in the payment of interest.

*W. R. Woodward* and *J. D. Johnson,* for intervenor.

*Phillips & Stewart,* for receiver.

*Butler, Stillman & Hubbard* and *Elenious Smith,* for complainant.

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

BREWER, J., (*orally.*) In the intervening petition of the Waters Pierce Oil Company, in the case of *Central Trust Co.* v. *Texas & St. L. Ry. Co.*, the question presented is whether the oils furnished by the intervenor come within the Missouri statute in reference to liens. The language of the statute contains the word "fuel," in addition to the words "labor and material;" and it is claimed that the use of the word "fuel" enlarges the meaning of the word "material," and makes it broad enough to cover all supplies furnished. But for that word "fuel" there would be no question. The idea which underlies these lien statutes is that because the labor and the material have gone into the building of the road or structure, and to that extent added to its value, therefore a lien for such labor and material should be given to him who does the one and furnishes the other.

Now, fuel does not go into the structure of a railroad; neither does coal oil. It is something used in the running of the road; a part of the supplies necessary for the operation of the road, but nothing which goes into the enduring structure. While we may be compelled to follow the language of the statute, and give for the fuel furnished a lien, yet I think in the construction of these statutes we should start from the underlying thought of giving security to him who adds to the value of the road, and that we should never carry the statute beyond that, unless imperatively demanded by the language used; particularly, as Brother TREAT suggests, when it would operate to override prior mortgages. So that, while that word "fuel" is in there, I take it it is not fair to give it the force of enlarging the meaning of the other words, "material," etc., but it should be considered as a new term, something added by the legislature, carrying its own weight, but giving no different meaning to the word "material" from that which it possessed in prior statues, and, in fact, changing the statutes only in this respect: that it adds a certain specified matter for which a lien is given. The master was correct in his conclusions. The exceptions will be overruled, and the report confirmed.