[No. 9181.    Department One.    November 25, 1910.]

GATE CITY LUMBER COMPANY, *Respondent,* v. THE CITY OF MONTESANO *et al., Appellants.*[1]

MUNICIPAL CORPORATIONS—CONTRACTS—BONDS ON PUBLIC WORK—MATERIALMEN—MECHANICS' LIENS. Rem. & Bal. Code, § 1133, requiring the mailing of duplicate statements to the owner of property, is part of the mechanics' lien law, and has no application to bonds required of contractors on public work to secure laborers and materialmen employed on the work, under Id., § 1159.

SAME—CONTRACTOR'S BOND—LIABILITY OF CITY—NOTICE. Where a city failed to require a contractor to enter into a bond for the performance of public work and the payment of debts incurred, as required by Rem. & Bal. Code, § 1159, the city's liability therefor is absolute; and the requirement of § 1161 for notice being for the protection of sureties has no application.

SAME—CONTRACTOR'S BOND—MATERIALMEN AND JUST DEBTS—WHAT CONSTITUTES—STATUTES—CONSTRUCTION. Under Rem. & Bal. Code, § 1159, requiring a city to take a bond from contractors on public work for the security of "materialmen" and "just debts incurred in the performance of the work," a lumber company does not bring itself within the terms of the statute by loading lumber on the cars at a distance and billing it to the contractor, where part of the lumber was diverted to other places from the cars and not used in the work nor delivered on the ground for use.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered April 18, 1910, upon findings in favor of the plaintiff, in an action to recover for materials furnished to a city contractor.    Reversed.

*O. M. Nelson,* for appellants.

*W. H. Abel,* for respondent.

[1]Reported in 111 Pac. 799.

RUDKIN, C. J.—On the 3d day of August, 1908, the defendant city entered into a contract with the defendant Montesano Planing Mill Co., wherein the latter agreed to replank a certain elevated roadway for the city, at the agreed price of $14.50 per thousand for all lumber used in the performance of the work.   Between the 24th day of August and the 25th day of September, 1909, the plaintiff sold and delivered to the contractor three car loads of lumber, to be used in the performance of its contract, at the agreed price of $642.76.   The city failed to require the contractor to enter into a bond, conditioned that it would faithfully perform all the provisions of its contract, and pay all laborers, mechanics, subcontractors and materialmen, and all persons who should supply the contractor or subcontractor with provisions and supplies for carrying on the work, all just debts, dues and demands incurred in the performance of such work, as required by the act of March 18, 1909, Laws of 1909, p. 716 (Rem. & Bal. Code, § 1159), the material parts of which are as follows:

Section 1, provides that when any council, acting for the municipality, shall contract with any person or corporation to do any work for the municipality, such council shall require the person or persons with whom such contract is made, to make, execute and deliver to such council a good and sufficient bond with two or more sureties, or with a surety company as surety, conditioned that such person or persons shall faithfully perform all the provisions of such contract, and pay all laborers, mechanics, and subcontractors, and materialmen, and all persons who shall supply such person or persons or subcontractors with provisions and supplies for the carrying on of such work, all just debts, dues and demands incurred in the performance of such work.   The next section provides that, if the mayor and common council of any incorporated city or town shall fail to take such bond, such incorporated city or town shall be liable to the persons mentioned in the preceding section to the full extent and for the full amount of all such debts so contracted by such contractor.

The present action was instituted against the contractor, its receiver, and the city, to recover the contract price of the material thus furnished, and from a judgment in favor of the plaintiff, according to the prayer of its complaint, the defendant city has appealed.

The appellant first contends that the action against it cannot be maintained because the respondent failed to deliver or mail to the owner or reputed owner of the property a duplicate statement of the material furnished, as required by section 1 of the act of March 4, 1909, Laws of 1909, p. 71 (Rem. & Bal. Code, § 1133). This section is a part of the mechanics' lien law of the state, and has no application to a case of this kind. The act requiring municipalities to take bonds from contractors is complete in itself, and contains no provision or requirement such as the appellant relies on here.

It is next contended that the notice prescribed by section 3 (Id. § 1161) of the act was not given. Such notice is only required when the statutory bond has been taken. The notice is for the protection of sureties, and has no application to a case like this where no bond was in fact taken. In such cases the liability of the city is made absolute by section 2 of the act.

It is lastly contended that all of the material for which a recovery is sought was not used in the construction of the roadway. The facts relating to the sale and delivery of the lumber are as follows: At or about the time the contract for the construction of the roadway was entered into, the defendant company informed one of the officers of the respondent that it was figuring on such a contract, and inquired at what price the respondent could furnish certain material. The respondent replied, $9 per thousand, f. o. b. at the mill. Later the defendant company sent a written communication to the respondent inquiring the lowest price at which certain specified material could be furnished, f. o. b. Montesano. The respondent replied in substance, $9 per thousand, f. o. b. at Gate. This letter was followed by an order for the material. Pursuant to this order, one carload of lumber was

shipped August 25th, a second September 9th, and the third September 25th. The testimony is very indefinite and uncertain as to the disposition made of the three carloads of lumber on their arrival at Montesano. It does appear, however, that some part of it was actually used in the construction of the roadway covered by the contract in question; some part of it was perhaps delivered on the ground for use in the construction of the roadway, but was afterwards diverted and used in other street work; and a considerable part was diverted to other places from the cars and was neither used in the construction of the roadway, nor delivered on the ground to be used therein.

The question then arises, who is a materialman, and what is a just debt incurred in the performance of contract work, within the meaning of the act of 1909. In the case of *Fuller & Co. v. Ryan*, 44 Wash. 385, 87 Pac. 485, we held that a materialman could not claim a lien for material which was neither used in the building nor delivered on the ground for use therein. See, also, *Foster v. Dohle*, 17 Neb. 631, 24 N. W. 208; *Weir v. Barnes*, 38 Neb. 875, 57 N. W. 750. We are not disposed to place a broader construction on the term *materialman*, and *just debts incurred in the performance of contract work*, under this statute. A more liberal construction would permit of the grossest frauds on the part of contractors, and is not necessary for the protection of *bona fide* materialmen. It appears from the testimony in this case that at least three different lumber concerns furnished material to be used in this roadway, and if a materialman brings himself within the terms of the statute by simply loading lumber on the cars at a distant point and billing it to the contractor without more, it can readily be seen that the contractor can mulct the city, or the sureties in case a bond is given, for the value of material many times in excess of the requirements of his contract.

In *Foster v. Dohle, supra*, the court said:

"But it will not be seriously contended that the mere fact

that the owner enters into a contract with a builder to erect or repair a building authorizes the builder to go to every lumber yard in the city and every hardware store and purchase from each a sufficient quantity of material for the erection or repair of the building in question, and make the owner of the building liable therefor.    If all this material was delivered by the materialmen at the building, and they acted in entire good faith, it is possible the owner might be liable, because the delivery of the material would be notice to him of the unusual quantity which was being furnished for which he might be liable.    But that question is not before the court.    The contractor, however, unless expressly constituted such, is not the agent of the builder, and cannot bind him by contracts for materials not put into the building or delivered at the same for use therein.    As there is nothing to show that any of the material not allowed by the court below was delivered at or used in the building the owner thereof is not liable for the same."

While that was a lien case, the argument against allowing claims for material which is not actually used in the structure or delivered at the same for use therein is equally applicable here.    For this reason, we are satisfied that the respondent did not bring itself within the requirements of the statute as to a considerable portion of the material for which a recovery was allowed, but the testimony is so indefinite and uncertain that it is impossible for this court to make a final disposition of the case.

The judgment will therefore be reversed, and a new trial awarded for the purpose of ascertaining the value of the material actually used in the performance of the contract, or delivered at the works for use therein.    The court will give judgment for such value when ascertained, but the respondent is entitled to recover nothing from the city beyond this.

FULLERTON, GOSE, MOUNT, and PARKER, JJ., concur.