GARY HAY & GRAIN CO., INC., RESPONDENT, v. CARL-
SON, DEFENDANT, AND FIDELITY & DEPOSIT CO. OF
MARYLAND, APPELLANT; FIRST NATIONAL BANK
OF COLUMBUS, DEFENDANT.

(No. 6,058.)

GARY HAY & GRAIN CO., INC., RESPONDENT, v. CARL-
SON, DEFENDANT, AND FIDELITY & DEPOSIT CO. OF
MARYLAND, APPELLANT; FIRST NATIONAL BANK
OF COLUMBUS, APPELLANT.

(No. 6,085.)

(Submitted March 21, 1927.   Decided April 13, 1927.)

[255 Pac. 722.]

*Principal and Surety—Highway Construction Bonds—Rules
of Construction—Extent of Liability of Surety—Right of
Laborers and Materialmen to Sue Surety in Own Names
—"Material" — Definition — Pleading — Cross-complaint—
Insufficiency.*

Principal and Surety—Highway Construction Contract—Bond Part of
Contract—Construction—Extent of Liability of Surety.
 1.   Where a surety bond is given for the performance of a con-
tract, the bond is made with relation to the contract and as a part
of it; the two must be construed together, and the surety binds
himself only to the performance of those acts which the principal
promises to perform as a part of his contract.

Same—Laborers and Materialmen may Sue Surety in Own Names,
When—When not.
 2.   Where the state highway commission requires a road construc-
tion contractor to promise in the contract awarded to him that he
will pay laborers and materialmen, and the surety on his bond for
the faithful performance of the work agrees to pay persons fur-
nishing material and labor if the contractor fails to do so, laborers
and materialmen may sue the surety directly in their own names
as on a contract made for their benefit, as third parties, under
section 7472, Revised Codes; it being otherwise where the contract
is silent as to paying such claims, though the surety promises to
pay them, the bond in that regard then being unenforceable be-
cause not supported by a consideration.

---

 1.   See 21 R. C. L. 974.
 2.   Right of laborers and materialmen to recover upon bond of con-
tractor, see notes in 27 L. R. A. (n. s.) 578; 25 L. R. A. 257. See, also,
21 R. C. L. 986.

**Same—Contract of Surety—Rule of Construction.**

3.  A contract of surety is subject to the same rules of construction as is any other contract, for the purpose of ascertaining and giving effect to the intention of the parties, and when the intention is thus ascertained, it must control.

**Same—Highway Construction Contract Bond to Pay for "Material" Furnished—"Material" Encompasses, What.**

4.  Construing the provision of a surety bond furnished the state highway commission for the faithful performance of a road construction contract, providing that the bond was conditioned that the contractor should "pay all persons furnishing material or performing labor in and about the construction," *held* that the word "material" encompasses only that which has gone into and becomes a part of the completed construction, such as gravel, piles to hold fills, explosives used for moving rock, etc., and does not refer to supplies, such as hay and grain fed to horses, oil and gas for trucks, or foodstuffs consumed by laborers in construction camps.

**Same — Highway Construction Bond — Rules Applicable in Construing Contract.**

5.  In construing a provision of a surety bond, such as the one referred to in paragraph 4, above, given the state highway commission under requirements exacted by state statutes for the construction of a state highway which forms a part of a federal aid project, the rules applied in state courts rather than those adopted by the federal courts under federal contracts should control.

**Pleading—Cross-complaint must Show Complete Cause of Action.**

6.  A cross-complaint, like an original complaint, must state facts sufficient to entitle the pleader to affirmative relief; it must show a complete cause of action and is not aided by any other pleading in the case; hence where a cross-complaint asked that the pleader be subrogated to the rights of a third person but failed to allege that the latter had any rights, a demurrer to it should have been sustained.

---

[1]  Highways, 29 C. J., sec. 351, p. 612, n. 48; sec. 353, p. 613, n. 76. Principal and Surety, 32 Cyc., p. 15, n. 7, p. 73, n. 19, p. 116, n. 60.

[2]  Bonds, 9 C. J., sec. 52, p. 33, n. 55, 56. Highways, 29 C. J., sec. 351, p. 612, n. 50; sec. 352, p. 612, n. 58.

[3, 4]  Highways, 29 C. J., sec. 351, p. 612, n. 49; sec. 353, p. 613, n. 70. Material, 39 C. J., sec. 2, p. 1385, n. 16, p. 1386, n. 23. Principal and Surety, 32 Cyc., p. 71, n. 10, p. 72, n. 11, p. 306, n. 90. Supplies, 37 Cyc., p. 607, n. 24, 29.

[5]  Courts, 15 C. J., sec. 317, p. 928, n. 69. Highways, 29 C. J., sec. 353, p. 613, n. 73.

[6]  Pleading, 31 Cyc., p. 227, n. 85, p. 228, n. 86. Subrogation, 37 Cyc., p. 390, n. 52.

*Appeal from District Court, Park County; H. J. Miller, Judge.*

ACTION by the Gary Hay & Grain Company, Inc., against the Fidelity & Deposit Company of Maryland and another,

---

3.  See 21 R. C. L. 977.

in which defendant named filed a cross-complaint against the
First National Bank of Columbus, Montana. From the judg-
ment the Fidelity & Deposit Company of Maryland and the
First National Bank of Columbus separately appeal. Re-
versed in part and remanded with instructions.

*Mr. M. R. Parcells* and *Messrs. Johnston, Coleman & John-
ston,* for Appellant First National Bank of Columbus, sub-
mitted a brief; *Mr. W. M. Johnston* argued the causes orally.

The complaint does not state a cause of action, unless the
bond was given expressly for the benefit of plaintiff-respond-
ent and the other materialmen whose claims were assigned to
it. (Sec. 7472, Rev. Codes 1921; *McKeever* v. *Oregon Mtg.
Co., Ltd.,* 60 Mont. 270, 198 Pac. 752.) The dominant pur-
pose of this bond was protection to the state. This is plain
alike from its terms and from the terms of the statute which
requires the bond. This dominant purpose might be defeated
if materialmen and laborers may ignore the state and sue
in their own name. They might thus exhaust the entire bond
and leave the state no redress for its loss. (*Fosmire* v.
*National Surety Co.,* 229 N. Y. 44, 127 N. E 472; *Lancaster*
v. *Frescoln,* 203 Pa. 640, 53 Atl. 508; *Buffalo Cement Co.*
v. *McNaughton,* 90 Hun, 74, 35 N. Y. Supp. 453, 156 N. Y.
702, 51 N. E. 1089; *Smith* v. *Bowman,* 32 Utah, 33, 9 L. R. A.
(n. s.) 889, 88 Pac. 687; *Montgomery* v. *Reif,* 15 Utah, 495,
50 Pac. 623; *Parker* v. *Jeffrey,* 26 Or. 186, 37 Pac. 712;
*Jefferson* v. *Asch,* 53 Minn. 446, 55 N. W. 604.)

There is no privity between the promisee named in the
bond, the state of Montana, and plaintiff-respondent as third
party. (*McDonald* v. *American National Bank,* 25 Mont. 456,
65 Pac. 896; *Hyink* v. *Low Line Irr. Co.,* 62 Mont. 401, 205
Pac. 236; *Lyth* v. *Hingston,* 14 App. Div. 11, 43 N. Y. Supp.
653; *Glawatz* v. *People's Guaranty Search Co.,* 49 App. Div.
465, 63 N. Y. Supp. 691.) Plaintiff-respondent has estab-
lished no right to sue in this case, unless it has brought it-

self within the rule of privity thus announced in the *McDonald Case.*

The condition of a surety bond providing for payment of materials and labor accounts gives no right of action to such materialmen or laborers, as the condition is without consideration. Generally there must be an express covenant that a contractor shall pay the claims of those not immediate parties to a contract to entitle them to sue to enforce the penalty of a bond given to secure the performance of a contract. The mere giving of a contractor's bond conditioned for such payment is not a promise by the contractor to pay the same where the contract contains no such obligation. The condition of the bond that such bills are to be paid, otherwise the bond should be enforced, must, in the absence of an agreement by the contractor to pay them, be considered a contract without consideration. (*State Board of Agriculture* v. *Dimick,* 46 Colo. 609, 105 Pac. 1114.) The liability of the surety cannot exceed that of its principal. (21 R. C. L. 974; *Hardaway & Prowell* v. *National Security Co.,* 150 Fed. 465; *Roberts* v. *Board of Commrs.,* 8 Wyo. 177, 56 Pac. 915; *Eising* v. *Andrews,* 66 Conn. 58, 50 Am. St. Rep. 75, 33 Atl. 585.)

Respondent Fidelity Company's cross-complaint does not state a cause of action against appellant. There is no allegation that respondent has paid any of the labor or material claims. The right of subrogation does not exist in favor of a surety until the surety has paid the indebtedness which should have been paid by its principal. This is elementary in the law of subrogation. (*Defiance Mach. Works* v. *Gill,* 170 Wis. 477, 175 N. W. 940; 25 R. C. L. 1315–1318; 37 Cyc. 374, 375; *Aetna Life Ins. Co.* v. *Town of Middleport,* 124 U. S. 534, 31 L. Ed. 537, 8 Sup. Ct. Rep. 625; *Jones* v. *Harris,* 90 Ark. 51, 117 S. W. 1077; *Miami Co. Bank* v. *State,* 61 Ind. App. 360, 112 N. E. 40; *McGrath* v. *Carnegie Trust Co.,* 22 N. Y. 92, 116 N. E. 787; *Columbia Finance & Trust Co.* v. *Kentucky Union Ry. Co.,* 60 Fed. 794, 9 C. C. A. 264; *Elgin Nat. Bank* v. *Goecke,* 295 Ill. 403, 129 N. E. 149;

*Portsmouth Fisheries Co.* v. *John L. Roper Lumber Co.,* 269
Fed. 586–589; *Ex parte Cockfield,* 118 S. C. 239, 110 S. E.
393–395; *Donnan* v. *Barnes,* 272 Pa. 33, 115 Atl. 883, 884.)

*Mr. E. C. Day* and *Mr. T. A. Mapes,* for Fidelity and De-
posit Company of Maryland, submitted briefs; *Mr. Day* argued
the causes orally.

We contend that since none of the supplies furnished by
the plaintiff or its assignor has added anything to the struc-
ture or entered into it in any manner, the plaintiff is not en-
titled to recover for the value of the hay and grain fed to
the horses; the value of the materials used in the construc-
tion of the cook shack and of the coal used for cooking; the
value of the groceries and provisions supplied for boarding
the men, or the value of the oil, gasoline and grease used in
the truck, automobile and caterpillar engine. (See *Holter
Hardware Co.* v. *Ontario Mining Co.,* 24 Mont. 198, 81 Am.
St. Rep. 421, 61 Pac. 8; *Schultz* v. *C. H. Quereau Co.,*
210 N. Y. 257, Ann. Cas. 1915B, 965, L. R. A. 1915E, 986,
104 N. E. 621; *United States* v. *Fidelity & Deposit Co.,* 169
Ill. App. 1; *Parkinson* v. *Alexander,* 37 Kan. 110, 14 Pac.
166; *United States* v. *Kimpland,* 93 Fed. 403; *Southern
Surety Co.* v. *Municipal Excavator Co.,* 61 Okl. 215, 160 Pac.
617; *Nye-Schneider-Fowler Co.* v. *Bridges, Hoye & Co.,* 98
Neb. 27, 151 N. W. 942; *Gate City Lumber Co.* v. *Montesano,*
60 Wash. 586, 111 Pac. 799; *United States Rubber Co.* v.
*Washington Engineering Co.,* 86 Wash. 180, L. R. A. 1915F,
951, 149 Pac. 706; *Oliver Const. Co.* v. *Crawford* (Miss.), 107
South. 877; *Watkins* v. *United States F. &. G. Co.,* 138 Miss.
388, 103 South. 224; *Wiss* v. *Royal Indemnity Co.,* 219 Mo.
App. 568, 282 S. W. 164; *Northern Pacific Ry. Co.* v. *Sanders
County,* 66 Mont. 608, 214 Pac. 596.)

As to the contention of appellant bank that the Fidelity
Company's cross-complaint is insufficient, it was not neces-
sary that the surety should have first paid to the plaintiff
the amount of the judgment before it had a cause of action

against the bank to recover the money which, in its hands, was applicable to the payment of plaintiff's claim. This case is not strictly for the enforcement of the equitable right of subrogation. It is rather one requiring the bank, which holds a trust fund belonging to the principal, to exonerate the surety by requiring it to pay the debt of the principal out of the trust fund, without requiring the surety to first make payment and then to commence a separate action against the bank. The court having all of the parties before it, has of course the right to make whatever order may be necessary to adjust the rights of the parties in accordance with the principles of equity as heretofore laid down by this court in the case of *Lanstrum* v. *Zumwalt,* 73 Mont. 502, 237 Pac. 205. In that case the court required the bank to return to the clerk of the court all money which it had withdrawn under order of court. We cite again the authorities upon which that case was decided: Rev. Codes 1921, secs. 8203, 8207; 2 Pomeroy's Eq. Rem., par. 919; 4 Pomeroy's Eq. Jur., sec. 1417; 7 Am. & Eng. Ency. of Law, p. 345; *Gastonia* v. *McEntee-Peterson Co.,* 131 N. C. 363, 42 S. E. 858; *Patton* v. *Carr,* 117 N. C. 176, 23 S. E. 182; *Whitney* v. *Cowan,* 55 Mass. 626. In this latter case the court lays down the principle that when it has the funds in its hands, or the parties before it, it "may fasten upon it, either in whole or in part, any equitable lien or trust which one of the parties may have established."

*Messrs. O'Connor & Miller* and *Messrs. Gibson & Smith,* for Respondent Gary Hay & Grain Company, submitted briefs; *Mr. Miles J. O'Connor* and *Mr. Vard Smith* argued the causes orally.

Such a bond as the one in question here will support an action thereon by claimants, either in their own names or in the name of the state. (29 C. J., Highways, p. 612, sec. 351; *Southwestern Portland Cement Co.* v. *Williams* (N. M.), 251 Pac. 380; *Road Supply etc. Co.* v. *Kansas Casualty & S. Co.*

(Kan.), 246 Pac. 503; *Algonite Stone Mfg. Co.* v. *Fidelity &
Dep. Co.,* 100 Kan. 28, L. R. A. 1917D, 722, 163 Pac. 1076;
*Knight & Jillson Co.* v. *Castle,* 172 Ind. 97, 27 L. R. A. (n. s.)
573, 87 N. E. 976; *Lomme* v. *Sweeney,* 1 Mont. 584; *United
States Gypsum Co.* v. *Gleason,* 135 Wis. 539, 17 L. R. A.
(n. s.) 906, 116 N. W. 238.)

The claims sued upon are claims for material within the
meaning and contemplation of the contract and bond. If the
claims for feed for the horses that worked on the highway,
the food that fed the men driving the teams and running the
engines, the gasoline, grease and oil that kept these machines
in motion, the lumber that sheltered the men and horses, and
made the forms for the concrete work, and the other items
mentioned in the accounts of the plaintiff-respondent and its
assignors, are not to be considered as materials, within the
meaning and contemplation of the contract and bond in ques-
tion, what things did the parties have in mind?

This road was to be built of earth and gravel. The parties
knew that horses and machinery would be required, under
modern methods of road building, in the construction of this
highway. They knew that men would have to be employed,
and that, located as the work was, pursuing an orderly and
economical manner of doing the work, in fact, of necessity,
that they would have to be boarded, right at the work, by
someone; they knew that the horses would have to be fed, right
there at the job; they knew that gasoline, oil and grease
would have to be used for fuel and for the lubrication of the
trucks, crushers and other machines used; they knew that by
reason of the distance of the work from Livingston, and from
the fact that there were no buildings near that could be used,
that some sort of shelter would have to be erected for the
men and the teams. They knew that lumber, cement, nails
and hardware would be required, and that coal or some sort
of fuel would have to be provided for cooking and heating.
In fact, it is reasonable to assume that they knew that all of

the articles for which recovery is sought herein would be required in connection with the work.

The federal courts, including the supreme court of the United States, have repeatedly held that the federal statute (sec. 6923, Comp. Stats.), requiring contractors doing public work to furnish a bond conditioned that they will ''promptly make payment to all persons supplying them with labor and materials in the prosecution of the work provided in such contract,'' and bonds given pursuant thereto, should both be liberally construed. The federal courts have held that within the phrase, ''materials in the prosecution of the work provided for,'' are the following: Provisions used by the contractor for feeding his men where the location of the work rendered the furnishing of such board necessary. (*Brogan* v. *National Surety Co.,* 246 U. S. 257, L. R. A. 1918D, 776, 62 L. Ed. 703, 38 Sup. Ct. Rep. 250 [see, also, Rose's U. S. Notes Supp.].) Rental of cars, track and other equipment, used by a contractor in facilitating his work, also the expense of loading this equipment, and the freight paid thereon to transport it to the place where it was used. (*Illinois Surety Co.* v. *Davis Co.,* 244 U. S. 376, 61 L. Ed. 1206, 37 Sup. Ct. Rep. 614 [see, also, Rose's U. S. Notes Supp.]; see, also, *Pacific Wood & Coal Co.* v. *Oswald,* 179 Cal. 712, 178 Pac. 854; *Multnomah County* v. *United States F. & G. Co.,* 87 Or. 198, L. R. A. 1918C, 685, 170 Pac. 525). Other cases adhering to the general rule, and majority holdings, that things of the nature of those involved in this case are included within the term ''materials,'' as used in bonds of this character, are the following: Gasoline and oil (*Smith* v. *Oosting,* 230 Mich. 1, 203 N. W. 131; *Standard Oil Co.* v. *Marvill,* 201 Iowa, 614, 206 N. W. 37; *Associated Oil Co.* v. *Commary-Peterson Co.,* 32 Cal. App. 582, 163 Pac. 702); lumber (*Aderholt* v. *Condon,* 189 N. C. 748, 128 S. E. 337); groceries (*United States Fidelity & G. Co.* v. *Henderson County* (Tex. Civ. App.), 276 S. W. 1119; *Baker City Merc. Co.* v. *Idaho Cement Pipe Co.,* 67 Or. 372, 136 Pac. 23); hay and feed for horses (*Early & Daniel*

*Co.* v. *American Surety Co.* (C. C. A.), 5 Fed. (2d) 670). In the case of *Franzen* v. *Southern Surety Co.* (Wyo.), 246 Pac. 30, the court made a most exhaustive examination of the authorities relative to the question as to what constituted materials, as the term was used in a bond furnished pursuant to a statute requiring a bond conditioned for the payment of, "material furnished in the execution of the contract" and held that the word included feed furnished for horses used, coal used for the generation of power, coal-oil used in the contractor's camp for the purpose of supplying light, and the haulage of such items.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal by the Fidelity & Deposit Company from a judgment against it and in favor of plaintiff, and appeal by the bank from a judgment against it and in favor of the Fidelity & Deposit Company.

In September, 1922, Albert Carlson entered into a contract with the state highway commission for the construction of approximately three miles of road in Park county, a part of a federal aid project, which contract required him to furnish all equipment, labor and material for the prosecution of the work. As a condition precedent to the complete execution of the contract, Carlson was required to furnish a surety bond, conditioned upon the faithful performance of his covenants and agreements under the contract, and, as a part of the contract, he was required to promise to pay for labor and material used. Carlson secured his bond from the Fidelity & Deposit Company and arranged with the First National Bank of Columbus to finance him during the performance of his contract, attempting to secure the bank by an assignment in advance of all moneys due or to become due under the contract. This assignment was filed with the state highway commission, which body agreed to pay the moneys, as they fell due, to the bank on condition that the assignee see that all creditors of the con-

tractor were paid in accordance with the contract; this condition was accepted by the assignee. For brevity and convenience, the various parties will hereafter be referred to as the plaintiff, the contractor, the surety, the bank and the commission.

Under the arrangement above referred to, all but the final payment of the contract price was paid by drafts in favor of the contractor sent to the bank; these were indorsed by the contractor and by the bank placed to the credit of the contractor in an account to which loans by the bank were also credited and against which the contractor checked in payment of accounts due on the contract. When final payment was due, it was disclosed that certain claims of which the commission had notice had not been paid, and the final payment was withheld and these claims paid, at least to the extent of the final payment due.

There remained certain claims in addition to those treated above, the largest of which was that of the plaintiff herein, and, for the purpose of combining all such claims in one action, the remaining creditors assigned their claims to the plaintiff who commenced action against the contractor and the surety by the filing of a complaint containing nine causes of action, or a separate cause of action on each claim outstanding. The complaint alleges that each claim is for "materials furnished and to be used in and about the construction of the highway."

The first and seventh causes of action are for hay and grain fed to the horses used; the fourth, fifth and sixth for oil, gasoline and grease used as fuel and lubricants for machinery, trucks and a Ford car employed in and about the construction; the eighth and ninth for foodstuffs consumed by the laborers, the contractor, and his family while the work was in progress. The second cause of action contains charges for coal used for cooking and heating purposes in camp; lumber, nails, etc., used in erecting a cook shack, mangers for the horses and frames for tents used as sleeping quarters at a

camp established some five or six miles from Livingston on the highway; a small amount of lumber used in making concrete forms and in flume work, and a small amount of cement used in the construction. The third cause of action is for gravel sold to the contractor and used for surfacing the highway.

The surety denied liability on each of the alleged causes of action, and, as an affirmative defense and cross-complaint, alleged that, under its contract, it was liable only for "labor and material actually used in and which went into the construction of the highway"; that the assignment to the bank was given without its knowledge or consent, was void and without effect; and that the bank should be compelled to return the money received from the commission for the payment of any award which might be made against the surety.

During the trial the surety was permitted, over the objection of the bank, to amend its cross-complaint to state, in effect, that it was entitled to be subrogated to the rights of the commission for the above purpose.

The bank was served with process, interposed a special demurrer to the cross-complaint and a general demurrer to the complaint, both of which were overruled, and thereafter answered, joining issue as to the allegations of the cross-complaint. The cause was finally brought to trial but, at the close of the evidence in which there was no conflict, on motion of the plaintiff, the court directed a verdict in favor of plaintiff and against the surety on each cause of action, and thereupon the surety moved that the court also withdraw the issues between it and the bank from the jury, which motion was sustained, and, later, the court found these issues in favor of the surety. Judgment was thereafter entered in favor of the plaintiff and against the contractor and surety on each cause of action stated in the complaint, and in favor of the surety and against the bank on the cross-complaint. Thereupon the surety appealed from the judgment against it, and by a separate appeal the bank challenged the right of the court to re-

quire it to reimburse the surety. Upon the hearing before us, the appeals were united and will now be disposed of as one.

1. On its appeal the bank contends that the complaint herein does not state a cause of action against the surety, for the reason that there is no privity of contract between the persons who furnished labor and material to the contractor and the surety. In other words, it contends that a person not mentioned in a bond cannot sue upon it in his own name, even though its provisions incidentally benefit him. This is the rule "in some jurisdictions," as stated in the recent work by Donnally on the Law of Public Contracts, section 336, but only certain of the authorities cited in support of the statement technically so hold; others hinge rather upon the general rule stated in section 337 of said work, which is that: "A bond conditioned for the faithful performance of the work is a bond for the indemnity of the public body merely, and laborers and materialmen cannot sue upon such a bond to recover wages or money due them." The first rule is, however, in effect in New York, where it was adopted in construing the section of the "Field's Code" adopted in this state, and now appearing as section 7472 of the Revised Codes of 1921, which reads: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." (*Fosmire* v. *National Surety Co.,* 229 N. Y. 44, 127 N. E. 472, and cases there cited.)

Following the New York rule and certain decisions of this court, construing the above statute to mean that the contract must be made "in direct terms" for the benefit of the person suing, we held in *Martin* v. *American Surety Co.,* 74 Mont. 43, 238 Pac. 877, that the rule applied to the surety bond under consideration in that case, and the bank now relies upon statements made therein to support its contention. As hereinafter shown, there is substantial conflict in the authorities as to the liability of a surety on a given set of facts, and, had the *Martin Case* come to us as one of original impression in

this state, we might now feel bound to follow all that is said therein; but while the result reached may be upheld under an exception to the rule hereinafter stated, the broad declaration of the rule therein contained is unfortunate in the light of the fact that we had, a short time prior to this decision, committed ourselves to the rule that, under proper conditions of the bond and contract, laborers and materialmen could recover from the surety on the bond. We refer to *Lanstrum v. Zumwalt et al.*, 73 Mont. 502, 237 Pac. 205, under which authority the plaintiff herein would be entitled to recover, provided it was entitled to sue in its own name, and the supplies described in the complaint come within the designation of "materials" found in the contract and bond. Owing to the apparent conflict in these two decisions, it will now be necessary to go thoroughly into the question of the liability of the sureties on bonds furnished in connection with contracts for the performance of public improvements.

2. "A surety is one who, at the request of another, and for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some act in favor of a third person," etc. (Sec. 8195, Rev. Codes 1921.) Such third person may enforce the obligation at any time before the contract is rescinded. (Sec. 7472, above.) Where the [1] bond is given for the performance of a contract, the bond is made with relation to the contract and as a part of it. (*Cole Mfg. Co.* v. *Morton,* 24 Mont. 58, 60 Pac. 587; *Butte Machinery Co.* v. *Carbonate Hill M. Co.,* 75 Mont. 167, 242 Pac. 956.) The two are to be construed together. (*Lyon* v. *Dailey Copper Co.,* 46 Mont. 108, 126 Pac. 931; *Smith* v. *Hoffman,* 56 Mont. 299, 184 Pac. 842.) The obligation of the surety is, therefore, coextensive with and measured by the promises of the principal (the contractor here) to the obligee (the state) appearing in the contract, provided proper expressions are used in the bond, and the surety by the bond binds himself only to the performance of those acts which the principal promises to perform as a part of his contract.

(32 Cyc. 116, note 60; 2 Story on Contracts, sec. 1122, p. 335; *Whittaker* v. *United States F. & G. Co.* (D. C.), 300 Fed. 129; *Hardaway & Prowell Co.* v. *National Surety Co.* (C. C. A.), 150 Fed. 465; *Evans & Howard Co.* v. *National Surety Co.*, 42 S. D. 109, 173 N. W. 448; *Blyth-Fargo Co.* v. *Free*, 46 Utah, 233, 148 Pac. 427.)

It is, therefore, apparent that when neither the contract nor the bond contains a promise to pay laborers and materialmen, and the bond is conditioned only for the faithful performance of the work, there is no privity of contract entitling such claimants to sue the surety.

3. Again, as in, the absence of statutory authority no lien [2] may be filed against public works, the obligee under such a bond cannot be injured by the failure of the contractor to pay for labor and material, and the governmental agency may or may not, at its pleasure, as a part of the contract exact a promise to make such payments (*Southwestern Portland Cement Co.* v. *Williams* (N. M. 1926), 251 Pac. 380); if none is exacted or contained in the contract, but is incorporated in the bond of which the contract is a part, such condition of the bond is unenforceable by laborers and materialmen, as the bond, in this particular, is without consideration (*State Board of Agriculture* v. *Dimick*, 46 Colo. 609, 105 Pac. 1114; *Jefferson* v. *Asch*, 53 Minn. 446, 39 Am. St. Rep. 618, 55 N. W. 604, and extensive note in 25 L. R. A. 257; *Townsend* v. *Rackham*, 143 N. Y. 516, 38 N. E. 731; *Standard Gas Power Corp.* v. *England Casualty Co.*, 90 N. J. L. 570, 101 Atl. 281; *Evans & Howard Co.* v. *National Surety Co.*, above.

Under this rule, the result reached in the *Martin Case* may be upheld, as the contract there under consideration contained no direct promise to pay for labor and material as a part of the contract.

4. Where, however, the governmental agency sees fit to exact a promise to pay laborers and materialmen as a part of the contract and requires the contractor to furnish a bond, which, in addition to assuring the faithful performance of the work, promises that the contractor will pay for labor and

material furnished for the prosecution of the work, it must be presumed that it thereby intended to benefit someone, and, as failure could not injure the state to whom the bond runs, the obligee could only be incidentally benefited.

As in the construction of contracts, "a bond shall be construed, if possible, so as to give force, effect, and meaning to all the words and clauses used in the bond, and so as to effectuate and carry into operation the reasonable intention of the parties; and such construction should be given, if this can fairly be done, that will support rather than defeat the bond" (9 C. J. 33; *Blyth-Fargo Co.* v. *Free,* above); and, where such a situation as is above referred to arises, courts readily find in the provision of the bond an intention to benefit the class of persons mentioned therein, sufficient to constitute privity of contract between those coming within the class and the surety, even though the dominant purpose of the bond is the protection of the obligee, which, under the New York rule, is said to be the controlling question (*Southwestern Portland Cement Co.* v. *Williams,* above; *Fitzgerald* v. *McClay,* 47 Neb. 816, 56 N. W. 828; *Hipwell* v. *National Surety Co.,* 130 Iowa, 656, 105 N. W. 318; *United States Gypsum Co.* v. *Gleason,* 135 Wis. 539, 17 L. R. A. (n. s.) 906, 116 N. W. 238; *City of Gastonia* v. *McEntee Co.,* 131 N. C. 363, 42 S. E. 858; *Dupont Powder Co.* v. *Culgin Pace Co.,* 206 Mass. 585, 92 N. E. 1023; *American Surety Co.* v. *Raeder,* 61 Ohio St. 661, 57 N. E. 1130).

In support of the action of the courts it is said, in effect, in *Knapp* v. *Swaney,* 56 Mich. 350, 56 Am. Rep. 397, 23 N. W. 162, that, through considerations of public policy, the law has made no provision, by lien or otherwise, for the protection of the laborers and materialmen for labor employed or material used in improving the public highways, but it cannot be denied that the same equity exists, and that the same moral obligation rests upon the governmental agencies letting such contracts to protect those who improve the highways as rests upon those making private improvements; that "individuals clothed with

public functions, * * * are no more excused from moral obligations than when acting in a private capacity."

It is said by the supreme court of the United States that a bond such as the one before us contained "two entirely distinct and separate obligations: First, that [the contractor] should fulfill all the conditions and covenants of his contract, * * * and, second, promptly make payment to all persons supplying him labor and materials in the prosecution of the work. * * * This [latter] covenant, * * * is inserted for an entirely different purpose from that of securing to the government the performance of the contract for the construction of the building." Inasmuch as there can be no lien filed against the construction, the government "solely for the protection of the latter [laborers and materialmen] requires a covenant for the prompt payment of their claims, * * * the covenant is made solely for their benefit." (*Guaranty Co.* v. *Pressed Brick Co.,* 191 U. S. 416, 48 L. Ed. 242, 24 Sup. Ct. Rep. 142.) It is as though two separate bonds were given.

Following this line of reasoning, the great weight of authority and, to our minds, the better reasoned cases, at least under such circumstances as are considered in the last paragraph, hold that, even though the dominant purpose of the bond is the indemnity of the obligee (the state), when the contract contains a promise on the part of the contractor to pay for the labor and material and the bond contains a condition based on such promise, the intention of the parties and the duty toward such claimants resting upon the surety, either legal or equitable, will be drawn from the insertion of those promises in the instruments, privity of contract established between the surety and the class of persons mentioned in the instruments, and those falling within that class may sue directly in their own names and recover from the surety. (*French* v. *Farmer,* 178 Cal. 218, 172 Pac. 1102; *Southwestern Portland Cement Co.* v. *Williams,* above; *Connor* v. *Aetna Indemnity Co.,* 136 Wis. 13, 115 N. W. 811; *Jordan* v. *Kavanaugh,* 63 Iowa, 152, 18 N. W. 851; *Evans & Howard Co.* v. *National Surety Co.,* above; *Baum* v. *Whatcom County,* 19 Wash. 626,

54 Pac. 29; *National Surety Co.* v. *Foster Lumber Co.,* 42 Ind. App. 671, 85 N. E. 489; *Devers* v. *Howard,* 144 Mo. 671, 46 S. W. 625; *Lyman* v. *City of Lincoln,* 38 Neb. 800, 57 N. W. 531; *Buffalo Cement Co.* v. *McNaughton,* 156 N. Y. 702, 51 N. E. 1089; *Montgomery* v. *Reif,* 15 Utah, 495, 50 Pac. 623; *Parker* v. *Jeffery,* 26 Or. 186, 37 Pac. 712.)

This is the rule adopted in this state in *Lanstrum* v. *Zumwalt,* except that the question of suing directly was not there involved, and we believe it is the only rule which may, under the circumstances of this case, in justice and good conscience be applied.

The contract and bond before us are identical with those considered in the *Lanstrum Case,* with the omission of the term "equipment," and we therefore hold that the complaint herein states a cause of action against the surety on such claims included therein as come within the meaning of the phrase "labor and material" furnished under the contract; anything to the contrary appearing in *Martin* v. *American Surety Co.,* above, is hereby expressly overruled.

5. The several specifications of error assigned by the surety [3, 4] on its appeal present but the question of the meaning of the word "material," contained in the contract and bond, construed in the light of the statutory provisions in effect at the time those instruments were executed. These provisions are found in sections 1783 to 1802, of the Revised Codes of 1921, dealing with the highway commission and certain federal statutes regarding contracts and bonds on federal aid projects.

Section 1790, Revised Codes of 1921, provides for the awarding of highway construction contracts, and declares that the contractor shall, before entering upon such work, execute to the state a bond conditioned for the faithful discharge of his duties under such contracts. We have no statutory requirement that such a contractor shall give a bond for the protection of those who furnish him with labor and material for the prosecution of the work, but the Act of August 13, 1894, now section 6923, United States Compiled Statutes, provides that on federal aid projects the required bond shall contain "the additional

obligation that such contractor  *  *  *  shall promptly make payments to all persons supplying him  *  *  *  with labor and materials in the prosecution of the work provided for in such contracts," while sections 7477a and 7477i of the Act declare that the construction work in each state shall be done in accordance with its laws, under the direct supervision of the state highway department and in accordance with the rules laid down by the secretary of agriculture. In 1905 the Act of 1894 was amended to read "labor or materials used in the construction or repair," but it is held that the change in phraseology is not significant. "The purpose of the amendment was merely to secure to the United States preference over others in the satisfaction of its claims against the contractor." (*Illinois Surety Co.* v. *Peeler,* 240 U. S. 214, 60 L. Ed. 609, 36 Sup. Ct. Rep. 321; *United States to Use of Hill* v. *American Surety Co.,* 200 U. S. 197, 50 L. Ed. 437, 26 Sup. Ct. Rep. 168.) "In respect to the condition of the bond required to be given, the language of the amended Act is precisely the same as that contained in the Act of August 13, 1894." (*Mankin* v. *Ludowici-Celadon Co.,* 215 U. S. 533, 54 L. Ed. 315, 30 Sup. Ct. Rep. 174.)

Although there should be no favoritism or tenderness shown to a company organized to act as a surety for hire (*Guaranty Co.* v. *Pressed Brick Co.,* above; *Getchell* v. *Peterson,* 124 Iowa, 599, 100 N. W. 550; *Richardson* v. *Steuben County,* 226 N. Y. 13, 122 N. E. 449), the contract is subject to the same rules of construction as is any other contract, for the purpose of ascertaining and giving effect to the intention of the parties, which, of course, must control (32 Cyc. 71; Donnally on Public Contracts, p. 466; *Searles* v. *Flora,* 225 Ill. 167, 80 N. E. 98; *United States to Use of Hill* v. *American Surety Co.,* above; *Williams* v. *Markland,* 15 Ind. App. 699, 44 N. E. 562), and, when the intention is thus ascertained, that intention must control.

6. Here the contract and bond, as the measure of the surety's liability, both refer only to "labor and material"; the contract provides that: "The contractor shall promptly make payment for

labor and material  *   *   *  to all persons supplying such contractor therewith for the prosecution of the work contemplated therein, and that he shall not permit any lien or claim to be filed or prosecuted against the state of Montana, or any officer, agent, or employee thereof, for or on account of labor or material furnished." This latter clause would seem to indicate a clear intention on the part of the commission to confine the protection of the second clause or obligation in the bond, as pointed out in *Guaranty Co.* v. *Pressed Brick Co.,* above, to such persons as might otherwise have a right to a lien against the construction. The phraseology of the bond departs somewhat from that of the contract; it provides that the bond is conditioned that the contractor "shall well and truly pay all and every person furnishing material or performing labor *in and about the construction.*"

The plaintiff contends that the italicized phrase "in and about the construction" applies to materials as well as to labor, whether becoming a part of the completed work or not. We do not think the bond is subject to that construction; in the first place, as pointed out above, the surety's liability is measured by the promise of the contractor; and, secondly, it will be noted that, throughout the statutes quoted and the contract and bond, reference is elsewhere made to "labor and material"; here the order is reversed, indicating to our minds an intention on the part of the parties to extend the obligation of the bond to include labor employed necessarily "in and about the construction"—such as the services of a watchman, blacksmiths, and the like, whose labor did not directly go into the construction. Had it been the intention of the parties to broaden the condition of the bond beyond that of the contract with reference to both labor and material, there would have been no reason for transposing the terms. We are not here called upon to determine the question of the liability of the surety to such additional laborers, as no such claim is included in the complaint. With this construction, the provisions of the bond with reference to material harmonize and cover the requirements of the contract.

7. In support of the contention that the supplies furnished come within the designation of "materials," counsel for plaintiff cite authorities holding sureties liable on contracts requiring the payment for "materials and supplies," "materials, supplies and equipment," "materials furnished for or in the doing of the work," and like expressions, and decisions holding that the word "supplies" is synonymous with "materials." These authorities are not in point, as the bond under consideration refers only to materials, and that term is, in fact, not synonymous with, but much narrower than, that of "supplies."

"The term 'supplies' * * * is defined as follows: 'That which is or can be supplied; * * * sufficient for given use or purpose; * * * a quantity of something supplied or on hand.'" (*Northern Pacific Ry. Co.* v. *Sanders County*, 66 Mont. 608, 214 Pac. 596.) It is there held that railroad ties on hand, and which would ultimately go into the roadbed, and were, therefore, materials, came within the designation of "supplies." The term may thus include materials, but it may, and does, include much that cannot be said to be "materials" under the following proper definitions of the term: "The substance matter of which a thing is made." (*Pendleton* v. *Franklin*, 7 N. Y. 508; 39 C. J. 1385.) "That which goes into and becomes a part of a construction or repair." (*Ludlow* v. *Hudson R. R. Co.*, 6 Lans. (N. Y.) 128; *Curlett* v. *Aaron*, 6 Houst. (Del.) 477; *Royal Indemnity Co.* v. *Day & Maddock Co.*, 114 Ohio St. 58, 44 A. L. R. 374, 150 N. E. 426.) "Matter which is intended to be used in the creation of a mechanical structure." (Bouvier's Law Dictionary.)

Following these definitions, the general rule is that when the bond mentions only material, the surety is liable only for the payment of that which has gone into and becomes a part of the completed work (Donnally on Public Contracts, sec. 331, and numerous cases cited), although the federal courts extend [5] the liability of sureties on government contracts to "anything which is an integral part of the work or necessarily involved in it; anything indispensable to the prosecution of the work and used exclusively in its performance" (Id., sec.

332)—citing *Brogan* v. *National Surety Co.*, 246 U. S. 257,
L. R. A. 1918D, 776, 62 L. Ed. 703, 38 Sup. Ct. Rep. 250,
where it is held that where work was under way in an almost
inaccessible region and it became indispensable that the con-
tractor board the men under him, the liability extended to
provisions furnished for that purpose, when it appeared that
indispensability was the sole reason for establishing a board-
ing-house, but that it would be otherwise if the contractor did
so as an independent enterprise for profit.  Plaintiff relies upon
this decision to uphold allowance for supplies furnished for
the preparation and service of meals, but, while the contractor
testified that such arrangement was necessary, his testimony
shows convenience rather than indispensability, and there is
nothing in the record to show what the arrangement was under
which he boarded the men or how their meals were paid for;
it does appear that he profited, at least to the extent of board
for himself and two children.  Furthermore, the rules applied
in state courts should, under the circumstances, control rather
than those adopted by the federal courts under federal con-
tracts.  (*Illinois Surety Co.* v. *Davis Co.*, 244 U. S. 376, 61
L. Ed. 1206, 37 Sup. Ct. Rep. 614.)  We do not care to follow
the federal rule if it goes to the extent claimed by counsel, but
agree with the comment of the supreme court of Ohio on the
holding, in *United States F. & G. Co.* v. *United States*, 231
U. S. 237, 58 L. Ed. 200, 34 Sup. Ct. Rep. 88, that the wages
of a stableman, who fed the horses used in construction, comes
within the terms of such a bond: "The same logic might well
have extended the scope of the bond to include the farmer who
produced the grain that was fed [to] the horses, the stockmen
who reared [them] and the breeder who bred them, and—why
stop there?  The natural result of such interpretation might
well be that the bond provided for the benefit of the laborers
who performed labor which goes into the construction, and for
the benefit of the materialmen who furnished material which is
incorporated in the construction, would be divided among la-
borers and materialmen, indirectly and distantly related to or
connected with the transaction, to such an extent that the ag-

gregate of claims would exceed the amount of the bond and result in partially defeating the very purpose of the legislation; namely, the payment of the men who perform labor and furnish material 'in the construction.' ''

"For these reasons we are disposed to give the construction to our statute that has generally been given to similar statutes by the other states  *  *  *  because it seems to us that that expresses the intention of the Ohio Legislature.''

This provision for the protection of laborers and materialmen on public works is analogous to the mechanics' and materialmen's lien law, and, as such items may not be filed against public works, it is a substitute for the lien they would otherwise have. (Donnally on Public Contracts, p. 476, and cases there cited.)  While provisions in our lien law, in effect, make the owner of property benefited the surety of the contractor on private work (*Merrigan* v. *English*, 9 Mont. 113, 5 L. R. A. 837, 22 Pac. 454), the terms used in the contract and bond are identical with those used in the lien law (sec. 8339, Rev. Codes 1921), indicating an intention that the liability should not extend beyond that of the owner of private property against which a lien might be filed.  This conclusion is strengthened when we note that, since the decision in the *Lanstrum Case,* the commission has eliminated the words, "and equipment," from its form of contract, and is supported by authorities under similar conditions. (*Gate City Lumber Co.* v. *City of Montesano,* 60 Wash. 586, 111 Pac. 799; *Massachusetts Bonding Co.* v. *Chouteau Trust Co.* (C. C. A.), 264 Fed. 793; *Wisconsin Brick Co.* v. *National Surety Co.,* 164 Wis. 585, L. R. A. 1917C, 912, 160 N. W. 1044.)  "The idea which underlies these lien statutes is that because the labor and the material have gone into the building of the road or structure, and to that extent added to its value, therefore a lien for such labor and material should be given to him who does the one and furnishes the other.'' (*Central Trust Co.* v. *St. Louis Ry. Co.,* 23 Fed. 703.)  And, in the absence of statutory extension of the lien, the furnishing of supplies which do not go into the construction gives no right to a lien against the construction. (*Holter Hardware*

*Co.* v. *Ontario Mining Co.,* 24 Mont. 198, 81 Am. St. Rep. 421, 61 Pac. 8.)   So here, in the absence of a showing of intention that the bond should cover supplies other than material which has gone into the construction, or, at most, material used and destroyed in temporary work necessary to the construction, such as forms for concrete work, piles to hold fills, and explosives used for moving rock and thus taking the place of manual labor (*Empire State Surety Co.* v. *Des Moines,* 152 Iowa, 531, 131 N. W. 870, 132 N. W. 837; *Friedman* v. *Hampden County,* 204 Mass. 494, 90 N. E. 851; *Sampson Co.* v. *Comm.,* 202 Mass. 326, 88 N. E. 911), the liability of the surety does not extend beyond payment for "materials" as above defined, which does not include equipment, of which the construction of the camp may be a part (*Royal Indemnity Co.* v. *Day & Maddock Co.,* above); fuels, oils and lubricants for machinery (*Holter Hardware Co.* v. *Ontario Mining Co.,* above); feed for horses used (*United States* v. *Fidelity & Deposit Co.,* 169 Ill. App. 1); groceries consumed by the laborers (*Parkinson* v. *Alexander,* 37 Kan. 110, 14 Pac. 466); or other supplies not going into construction (*Beals* v. *Fidelity & Deposit Co.,* 76 App. Div. 526, 78 N. Y. Supp. 584; Id., 178 N. Y. 581, 70 N. E. 1095).

The trial court erred, therefore, in instructing a verdict on causes of action for the price of supplies other than materials as above defined.

The surety makes no contention that it is not liable for the purchase price of gravel on which the third cause of action is predicated, amounting to $180, and to this amount should be added the sum of $4 for cement included in the second cause of action. Had the plaintiff shown the value of the small amount of material used for concrete forms and other temporary construction and destroyed, this might also be added, but the record is silent on the subject.

The judgment against the surety must be modified by reducing the amount thereof from $5,281.09 to $184, with interest thereon from September 30, 1923, to the date of the modification.

8. On its appeal the bank has assigned thirty-six errors alleged to have been made by the court, many of which have already been disposed of, as they deal with the right of the plaintiff to recover; the only other assignment now necessary [6] to consider is that the cross-complaint does not state facts sufficient to constitute a cause of action against the bank, raised on demurrer and objection to the introduction of evidence.

The cross-complaint merely alleges that the plaintiff, the surety, and the bank are corporations, and that the commission is created by law; that the contract and bond were entered into; that the contractor assigned all money due or to become due him under the contract to the bank; that this was done without the knowledge or consent of the surety, and it did not learn thereof until after all of the payments were made to the bank; and that prior to the commencement of this action the commission "paid to the said  *  *  *  bank all moneys earned by and due to the said  *  *  *  contractor." It then alleges that the assignment is void under Article 1 of the supplementary specifications made a part of the contract, and is void and of no effect as against claims covered by the contract and bond; that the making and acceptance of the assignment constituted a material and unauthorized change in the terms and conditions of the contract, upon which the surety had a right to rely; that the bank and the commission are necessary and indispensable parties to the action, to the end that there may be a full determination of the issues framed and that the rights of all the parties may be determined. The contract was made a part of the cross-complaint.

The cross-complaint contains no allegation that the contractor did any work under the contract, except as it may be drawn from the fact that the commission paid all money earned or due to the contractor, to the bank; it contains no allegation that the contractor purchased any materials for use on the construction, or that there are any materialmen in existence whose claims have not been paid, or that there is any

liability under the bond which might be enforced against the surety.

It is elementary that a cross-complaint, like an original complaint, must state facts sufficient to entitle the pleader to affirmative relief; it must show a complete cause of action (*Dowd* v. *American Surety Co.*, 60 Or. 56, 118 Pac. 198; *Winter* v. *McMillan*, 87 Cal. 256, 263, 22 Am. St. Rep. 243, 25 Pac. 407; *Mesker* v. *Bishop*, 56 Ind. App. 455, 103 N. E. 492, 105 N. E. 644); and it is not aided by any other pleading in the case (*Coulthurst* v. *Coulthurst*, 58 Cal. 239; *Conger* v. *Miller*, 104 Ind. 592, 4 N. E. 300).

Where, as in the case at bar, a cross-complaint asks that the pleader be subrogated to the rights of a third person, but does not allege that the latter has any rights, a demurrer to the cross-complaint should be sustained (*Dowd* v. *American Surety Co.*, above), and the court erred in this particular.

For the reasons stated, the cause is remanded to the district court of Park county, with instruction to modify the judgment in favor of the plaintiff and against the surety by reducing the amount thereof to $184, with interest at eight per cent per annum from September 30, 1923, to the date of the modification, and, as modified, the judgment is affirmed.

The judgment against the bank is reversed. The surety company will recover its costs on appeal from the plaintiff, and the bank will recover its costs on appeal from the surety company.

*Remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and GALEN concur.

Rehearing denied April 29, 1927.