## MINNEAPOLIS STEEL & MACHINERY CO. v. FEDERAL SURETY CO. *

Circuit Court of Appeals, Eighth Circuit. July 23, 1929.

No. 8237.

*Rehearing denied October 12, 1929.

C. P. Randall, of Minneapolis, Minn. (Claude G. Krause and Cobb, Hoke, Benson, Krause & Faegre, all of Minneapolis, Minn., on the brief), for appellant.

Phillip F. Sherman, of Minneapolis, Minn. (L. E. Melrin and Ware & Melrin, all of Minneapolis, Minn., on the brief), for appellee.

Before KENYON and VAN VALKEN-BURGH, Circuit Judges, and OTIS, District Judge.

OTIS, District Judge. This case is here on a second appeal. The facts are these:

H. M. Buell, doing business under the firm name of Buell Bridge Company, on the 16th day of September, 1921, signed and entered into a contract with the state highway department of the state of Montana for the construction of a bridge on a highway in that state. To insure the faithful performance of that contract, Buell as principal, and the appellee as surety, on the 16th day of September, 1921, executed to the state highway department for the state of Montana a surety bond. This was in accordance with a requirement of the laws of Montana that the contractor, upon being awarded a contract by the highway department, should execute to the state a bond conditioned for the faithful discharge of the contractor's duties under its contract. The bond in this case named the state of Montana as obligee, and, in addition to specifying that it was given for the faithful discharge of the contractor's duties under the contract, also contained the provision that the bond would be void if the contractor paid all claims for labor performed or material furnished in connection with the construction called for in the contract, otherwise to remain in full force and effect.

The contract between Buell and the state highway commission contained no promise on the part of Buell in so many words that he would pay for labor and material furnished. But it did provide that the "contractor shall furnish at his own expense all materials to be used on the project."

In the course of the construction, and after the date of the execution and delivery of the bond, the appellant furnished Buell structural steel on which there was due at the time of the trial $7,031.61, plus accrued interest. An action was brought by the appellant to recover from the appellee as surety on the bond this amount. On the first trial of the case the appellant recovered. That judgment was reversed and the case remanded by this court [Federal Surety Co. v. Minneapolis Steel & Machinery Co., 17 F. (2d) 242, 246], on the ground "that the bond interpreted in accordance with the statutory provisions and the decisions of the state of Montana created no obligation in favor of the Minneapolis [Steel and Machinery] Company which it may enforce in its own name in an action either at law or in equity." The case was submitted to the District Court a second time on precisely the same record as was made at the first trial. The trial court, deeming itself bound by the decision of this court on the first appeal, found generally for the appellee. The case is here now on an appeal from that judgment.

It is urged by the appellant that since on the first appeal the decision of this court was based upon a construction of Montana law, particularly of section 7472, Revised Codes of Montana 1921, and since, subsequent to that decision, the Supreme Court of Montana has, as is contended, in the case of Gary Hay & Grain Co. v. Carlson, 79 Mont. 111, 255 P. 722, announced an interpretation of the Montana law in question directly opposite to that made by this court, this court should now adopt and follow the construction of the Montana law adopted by the Supreme Court of that state. It is contended that, if that is done, the appellants must prevail and the judgment of the district court in the last trial be reversed.

The questions to be decided on this appeal are these: First, will this court reconsider its former opinion, if it appears that the Montana court has, since the first decision herein, settled the question of substantive law on which the first decision rested in a manner at variance with this court's interpretation of that law on the former appeal? Second, does the Montana law, as interpreted by the latest decisions of its courts, require a judgment for plaintiff under the circumstances of this case?

1. The former decisions of this court established the law of the case. As a general rule on a second appeal the law of the case thus established will be adhered to. Clark v. Keith, 106 U. S. 464, 1 S. Ct. 568, 27 L. Ed. 302; Supervisors of Wayne County v. Kennicott, 94 U. S. 498, 24 L. Ed. 260; Guarantee Co. v. Phenix Insurance Co. (C. C. A. 8) 124 F. 170, 174; Whitfield v. Hanges et al. (C. C. A. 8) 266 F. 69. The law of the case, however, "as applied to the effect of previous orders on the later action of the court render-

ing them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." Messinger v. Anderson, 225 U. S. 436, 444, 32 S. Ct. 739, 740 (56 L. Ed. 1152). This court, therefore, has the power to reconsider its construction of the Montana statute as declared on the first appeal, but, in conformity with the general rule, that should not be done unless under exceptional circumstances. Such exceptional circumstances exist where the decision of this court on a first appeal is bottomed on decisions of the Supreme Court of a state construing a statute of that state which, before the second appeal, has been followed by other decisions of the same court placing a different construction on such statute. St. Louis & San Francisco R. Co. v. Quinette (C. C. A. 8) 251 F. 773, 775. In such exceptional circumstances this court will reconsider the conclusion formerly reached, although it may not even then follow the construction last adopted by the Supreme Court of the state. Before, however, even a reconsideration is warranted, it must clearly appear that a different construction has been placed upon the statute involved by the Supreme Court of the state. It is to be determined in this case then, first of all, whether, as is contended by appellant, the Supreme Court of Montana in the Gary Hay & Grain Co. Case did declare the law of Montana differently from the declaration of this court on the first appeal.

2. The facts in the Gary Hay & Grain Co. Case were these: One Carlson entered into a contract with the state highway commission of Montana for the construction of a certain roadway in that state. His contract required him to furnish all equipment, labor, and material necessary for the prosecution of the work, and he was required in the contract to promise to pay for labor and material used. He was required to give a bond which was furnished by the Fidelity & Deposit Company, conditioned upon the faithful performance of his covenants and agreements under his contract. The Gary Hay & Grain Company furnished Carlson, the contractor, various materials used in connection with the work for which Carlson failed to pay that company. Suit was brought by the company against the surety. The Supreme Court of Montana held that the company could recover from the surety by virtue of section 7472 of the Revised Codes of Montana for 1921, which provides that "a contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."

It was held that the bond in this case was a contract made expressly for the benefit of persons furnishing materials used in the construction involved, and therefore for the benefit of the Gary Hay & Grain Company, and that it might be enforced by that company. The court said:

"Where the bond is given for the performance of a contract, the bond is made with relation to the contract and as a part of it. * * * The two are to be construed together. * * * The obligation of the surety is, therefore, coextensive with and measured by the promises of the principal (the contractor here) to the obligee (the state) appearing in the contract, provided proper expressions are used in the bond, and the surety by the bond binds himself only to the performance of those acts which the principal promises to perform as a part of his contract. * * *

"It is, therefore, apparent that when neither the contract nor the bond contains a promise to pay laborers and materialmen, and the bond is conditioned only for the faithful performance of the work, there is no privity of contract entitling such claimants to sue the surety.

"Again, as in the absence of statutory authority no lien may be filed against public works, the obligee under such a bond cannot be injured by the failure of the contractor to pay for labor and material, and the governmental agency may or may not, at its pleasure, as a part of the contract exact a promise to make such payments; * * * if none is exacted or contained in the contract, but is incorporated in the bond of which the contract is a part, such condition of the bond is unenforceable by laborers and materialmen, as the bond, in this particular, is without consideration. * * *

"Where, however, the governmental agency sees fit to exact a promise to pay laborers and materialmen as a part of the contract and requires the contractor to furnish a bond, which, in addition to assuring the faithful performance of the work, promises that the contractor will pay for labor and material furnished for the prosecution of the work, it must be presumed that it thereby intended to benefit some one, and, as failure could not injure the state to whom the bond runs, the obligee could only be incidentally benefited.

" * * * Where such a situation as is above referred to arises, courts readily find in the provision of the bond an intention to benefit the class of persons mentioned therein, sufficient to constitute privity of contract between those coming within the class and the

surety, even though the dominant purpose of the bond is the protection of the obligee. * * *

"* * * Even though the dominant purpose of the bond is the indemnity of the obligee, * * * when the contract contains a promise on the part of the contractor to pay for labor and material and the bond contains a condition based on such promise, the intention of the parties and the duty toward such claimants resting upon the surety, either legal or equitable, will be drawn from the insertion of those promises in the instruments, privity of contract established between the surety and the class of persons mentioned in the instruments, and those falling within that class may sue directly in their own names and recover from the surety."

The fact upon which the case turned was that the contract contained a promise on the part of the contractor to pay for labor and materials, a promise which had been exacted by the state, without which promise in the contract third persons could not recover. The situation was contrasted with that discussed in Martin v. American Surety Co., 74 Mont. 43, 238 P. 877, in that in the latter case "the contract there under consideration contained no direct promise to pay for labor and material as a part of the contract." The contrast thus drawn by the Supreme Court of Montana between the case now relied on by the appellant and the Martin Case is significant. It clearly indicates that that court now holds only that a materialman as a third person can recover when there is, not only a promise in the contract to pay laborers and materialmen, but a direct promise, something more than a promise which may be held to be implied. A direct promise is necessary to satisfy the language of the statute that a contract which may be enforced by a third person must be one "made expressly for the benefit of such third person."

As we view the matter, there is the same distinction between the facts of the present case and the facts in the Gary Hay & Grain Co. Case, as the Supreme Court of Montana pointed out between that case and Martin v. American Surety Co. In the Gary Hay & Grain Co. Case the contract with Carlson, the original contractor, contained an express provision whereby he promised to pay for labor and materials. The contract in the present case obligated Buell, the contractor, to furnish labor and material at his own expense.

If these differing provisions of the two contracts are identical in significance, and the appellant contends they are, then, if the Gary Hay & Grain Co. Case is controlling now upon this court, as appellant contends it is, the appellant is entitled to recover.

But does the provision in the contract in this case that the contractor will furnish labor and material at his own expense have the same meaning as the provision in the contract discussed in the Gary Hay & Grain Co. Case that the contractor promises to pay for labor and material used? Putting the question more exactly, it is this: The Supreme Court of Montana having decided in the Gary Hay & Grain Co. Case that a provision in a contract that the contractor promises to pay for labor and material used is a provision made expressly for the benefit of those furnishing materials within the meaning of section 7472, is a provision in a contract by which the contractor agrees to furnish material at his own expense similarly a provision made expressly for the benefit of persons furnishing materials?

Deferring a consideration of the cases relied on by the appellant as holding the two provisions here under discussion identical in meaning, it certainly cannot be said to be at once apparent that they have a similar significance either in implying or expressing a promise to pay for labor and materials. Each indicates, indeed, that the state, as one of the two contracting parties, is not to be at any expense on its part for labor and materials, but that that expense is to be borne by the contractor. But are they not wholly dissimilar in what is here the important consideration? A provision by which the contractor promises to pay for labor and materials assumes a class of persons who will furnish such labor and materials and who therefore will benefit by that promise. It assumes that the contractors must obtain from others the materials he will require. In effect, it describes a class from which the contractor will obtain materials, and for whose benefit the promise to pay for materials is exacted in the contract. There is none of this meaning in the provision that the contractor will furnish materials "at his expense." The words "at his expense" do not describe or indirectly include an idea of benefiting any others than the state itself. The protection which is involved in the words "at his expense" is the protection of the state and not the protection of third parties who may furnish material and labor.

Let us take a simple illustration: A, desiring a house erected on a piece of ground belonging to him, contracts with B for its erection. By the terms of the contract B is to furnish the materials. An inclusion in

that contract of the words that B is to furnish the materials "at his expense" serves no other purpose than to emphasize and make clear what was already B's obligation. It is inserted in the contract in the sole interest of A and for his sole benefit. It imposes no obligation either upon A or upon B towards X, who later may sell B materials for A's house. It does not so much as recognize the existence of X. To construe such a contract as being either expressly or impliedly for the benefit of X, when neither X nor the class to which he belongs is mentioned in the contract, is to give it a meaning which the words used by no means justify.

In support of its contention that a contractor's obligation to supply materials at his expense is identical in meaning with a promise on his part to pay for labor and materials, appellant cites Royal Indemnity Co. v. Northern Ohio Granite & Stone Co., 100 Ohio St. 373, 126 N. E. 405, 12 A. L. R. 378, decided by the Supreme Court of Ohio, December 9, 1919; W. P. Fuller & Co. v. Alturas School District, 28 Cal. App. 609, 153 P. 743, decided by the District Court of Appeals of California October 20, 1915; Callan v. Empire Surety Co., 20 Cal. App. 483, 129 P. 978, 981, decided by the District Court of Appeals of California February 1, 1913; and Lyman v. City of Lincoln, 38 Neb. 794, 57 N. W. 531, decided by the Supreme Court of Nebraska January 4, 1894. Only the first two of these cases are in point at all. In each of them the contract involved contained a provision whereby the contractor promised to furnish materials at his own expense. In each case it was held that such an obligation was equivalent to a promise on the part of the contractor to pay for materials. It is important to be noted, however, that neither of these decisions construes such a contract provision as one made *expressly* for the benefit of those furnishing materials.

In Royal Indemnity Co. v. Northern Ohio Granite & Stone Co., supra, the provision is described by the court as "ambiguous." The court said:

"There is some ambiguity in the employment of this clause. There was no necessity for the employment of these words for the protection of the city, because it was already protected by another term of the bond, which provided that the city should be saved harmless from all claims and demands against it. These words must therefore have been used for a definite purpose."

In other words, the Supreme Court of Ohio, by a construction of the language employed in the contract, arrived at the conclusion that it was intended for the benefit of materialmen. But that is far from holding that the provision was one made "expressly" for their benefit.

In W. P. Fuller & Co. v. Alturas School District, supra, the court said:

"While neither the bond itself nor the building contract expressly guarantees that the contractor shall pay claims arising against him by reason of materials and labor furnished to him for use in the construction of the building, it is nevertheless, very clear that the language of the contract sufficiently implies that such obligation was imposed upon him to justify us in giving the undertaking that interpretation, and that such was its intention and purpose."

In other words, the court in this case definitely held that the contract provision by which the contractor promised that materials would be furnished at his expense was not a provision made expressly for the benefit of those who furnished materials, but was one which by implication was susceptible of that interpretation.

And no other view is tenable. If an agreement by a contractor that materials will be furnished at his expense can be construed at all as implying a promise on his part to pay for materials, it is certainly an implied promise, and not an express one. It is not, as is required by the language of section 7472, an obligation "made expressly for the benefit of a third person." The word "expressly" has a definite meaning in law. As an adverb it has the same meaning as the adjective "express," and that has been defined (see Words and Phrases, Second Series, vol. 2, page 405) thus:

" 'Express' means 'made known distinctly and explicitly, and not left to inference or implication; declared in terms; set forth in words; manifested by direct and appropriate language, as distinguished from that which is inferred from conduct. The word is usually contrasted with "implied" ' (citing Black, Law Dict.). 'Express' means 'stated or declared as opposed to "implied"; that which is made known and not left to implication. It is a rule that when a matter or thing is expressed it ceases to be implied by law' (citing Bouv. Law Dict. [Vol. 1, page 1162]). ' "Express" is defined as directly stated; not implied or left to inference; distinctly and pointedly given; made unambiguous by special intention; clear; plain' (citing Am. & Eng. Enc. Law). 'Express' means 'directly stated, not implied or left to inference' (citing Webst. Dict.). 'Express' means 'given in

direct terms; not implied; not dubious; clear; definite; explicit; plain; manifest' (citing Worcest. Dict.). 'Express' means 'clearly made known; distinctly expressed or indicated; unambiguous; explicit; direct; plain. In law, commonly used in contradistinction to "implied" ' (citing Cent. Dict.)."

Our conclusion is that, while the case of Gary Hay & Grain Co. v. Carlson holds that a contract which contains a promise on the part of the contractor that he will pay for labor and materials is a contract "made expressly for the benefit of a third person," and therefore one which a third person may enforce in a suit brought by himself against either the contractor or his surety, the case is not authority for appellant's contention that a contract containing a provision that materials will be supplied at the expense of the contractor is one "made expressly for the benefit of a third person." The case does not then announce a rule different from that which was applied by this court on the first appeal. Since only if it did announce a different rule would we be justified in departing from our former decision, and, since it does not announce a different rule, it follows that the judgment below should be, and is, affirmed.