**ROSBOROUGH et al. v. CHELAN COUNTY, WASH.**

**WICK et al. v. SAME.**

Nos. 6429, 6430.

Circuit Court of Appeals, Ninth Circuit.

Oct. 26, 1931.

Rehearing Denied Nov. 30, 1931.

Berkey & Cowan, of Spokane, Wash., for appellants.

J. A. Adams and Sam M. Driver, both of Wenatchee, Wash., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges.

WILBUR, Circuit Judge.

The above-entitled appeals were taken separately and on separate transcripts, but, by agreement of counsel, were briefed and argued together. With exception of the description of the land, the points involved are practically identical, and we will, therefore, deal with the two cases in a single opinion.

The proceedings were in eminent domain, instituted by Chelan county, Wash., in the superior court of that county, and removed to the United States District Court upon the application of appellants, who are residents of the city of Philadelphia, Pa. In the petition for removal, the petitioners allege that they have appeared specially solely for the purpose of removal. Upon the removal of the case to the United States District Court for the Eastern district of Washington, appellants made a motion to make more definite and certain the allegations of the complaint, and also demurred to the complaint, but in both demurrer and motion the appellants reserved and retained their special appearance and their right to question the jurisdiction of the court. It is claimed by the appellee that under these circumstances there was a general appearance. This point, however, is not well taken. The appearance for the purpose of removal does not constitute a general appearance. Cain v. Commercial Pub. Co., 232 U. S. 124, 34 S. Ct. 284, 58 L. Ed. 534. The objection of counsel to the jurisdiction of the court having been overruled, the filing of the demurrer did not waive its special appearance. York County Sav. Bank v. Abbot (C. C.) 139 F. 988.

The appellee relies upon the provisions of Rule 22 of the District Court to convert the special appearance of appellants into a general appearance, but this rule, in so far as it makes such provision, has been declared by the Supreme Court to be unconstitutional. Davidson Bros. Marble Co. v. U. S. ex rel. Gibson, 213 U. S. 10, 29 S. Ct. 324, 53 L. Ed. 675.

The contention of the appellants that the superior court of Chelan county (and, on removal, the United States District Court for the Eastern district of Washington) did not have jurisdiction is based upon the alleged insufficiency of the published notice to give jurisdiction to the court over the nonresident appellants. The notice was published under and in pursuance of the provisions of section 922 of the Remington Comp. Stat. of the state of Washington. The date of hearing was the 30th day of January, 1929, and the date of the first publication was January 7th; the intervening period being 23 days. The notice was published on the 7th, 14th, 21st, and 28th. Appellants contend that under the statute in question there would have to be a publication for 2 full weeks, namely, beginning January 7th and ending January 21st in order to constitute 2 weeks' notice upon a nonresident, and that therefore the appellants were entitled to have 10 days, that is, to January 31st, in which to appear. The difficulty with this contention is that the question has been decided otherwise by the Supreme Court of the state of Washington (State ex rel. Woodruff v. Superior Court, 145 Wash. 129, 259 P. 379, 381) in which it was held that the 2 weeks dated from the first day of publication, consequently, that if 2 weeks intervened between the first publication and the hearing and the notice had been published once a week for 2 successive weeks, the statute had been complied with. The Supreme Court of the state of Washington, observing that "the real question here is that of reasonable notice to a nonresident and opportunity to be heard," also held that, where the return day was fixed for October 11, 1926, and notice of the hearing was published on September 23, 1930, and October 7th, "three weekly publications with 18 days between the date of the first publication and the return day," the notice to a nonresident was ample to constitute due process of law; that the notice to the nonresident gave a reasonable opportunity to be heard. The relator in that case, who is one of the appellants in this case, appealed to the Supreme Court of the United States, and that court held that the time allowed in that case for appearance was reasonable, and that the statute of Washington, as construed by the Supreme Court, was not violative of the due process clause of the United States. Wick v. Chelan Electric Co., 280 U. S. 108, 50 S. Ct. 41, 74 L. Ed. 212. These decisions are controlling in this action. Appellants do not concede this, but contend that the decisions of both the state Supreme Court and the United States Supreme Court are erroneous, for the reason that they have not given proper consideration to the provision in said section 922 requiring 10 days' notice. The contention of the appellants is that they are entitled to 10 days in which to appear after the expiration of the 2 weeks' notice. It is apparent that this matter was not overlooked in the opinions quoted. The court was evidently of the opinion that the 10-day provision of the statute did not relate to nonresidents who were to be

notified in an entirely different manner than residents. However that may be, we are bound by the decisions of the Supreme Court of the state of Washington as to the proper interpretation of the statute. It follows that the United States District Court had jurisdiction of the subject-matter and of the parties.

■ After the denial of appellants' motion above mentioned and the overruling of their demurrers, they did not further appear in the action. Their attorney died, but they were notified by mail of his death, and they were also notified by mail of the time of the hearing for the determination of the question of public necessity and convenience, and later were notified by mail of the hearing of the matter before a jury for the fixing of the amount of damages to be awarded to them for the taking of the land in question. The point is made that the notices served by mail upon the appellants of the hearings above mentioned did not give sufficient opportunity to prepare for such hearings and to appear. In view of the fact that there is no statute requiring notice to a defaulting defendant of either of the above-mentioned hearings, the point is without merit. They did, however, in fact receive notices of the hearings in time at least to have applied to the court for a continuance, notice of hearing on June 5, 1930, upon the order of public necessity and convenience, and notice of setting the cause for trial on November 20, 1930, having been received by the respondents on May 31, 1930, and November 3, 1930, respectively. Apparently it was the intention of appellants to stand on their objection to the jurisdiction of the court; although on November 25, 1929, in deciding the case of Wick v. Chelan Electric Co., supra, our Supreme Court had accepted as binding upon it, and not repugnant to the due process clause of the Fourteenth Amendment, the state court's construction of section 922 as providing in effect that the first publication of notice of presentation of petition in condemnation constituted service and that the intervening 18 days was sufficient. Here, as previously pointed out, the intervening period was 23 days.

■ Appellants, having failed to appear at either trial, are not in a position to take advantage of the insufficiencies and defects in the evidence adduced thereon. They made no motion for a directed verdict, and no motion for a determination in their favor on the question of public necessity. Such motions would be essential to reserve their right to question the sufficiency of the evidence if they had been present at the trial, and, by absenting themselves from the trial, they cannot place themselves in a more favorable position. Moreover, the evidence is not brought here by a bill of exceptions, and therefore is not properly a part of the record. The only question which the appellant can properly raise upon this appeal under the circumstances is the sufficiency of the complaint to state a cause of action.

■ In this regard, one of the appellants' principal contentions is that the description of the property to be taken, set forth in the petition for condemnation and in the notice thereof and in the decree of condemnation, does not describe any property. This contention is based on an admitted mistake in a description of the property sought to be taken from the appellant Margaret Rosborough. In describing the center line of the property sought to be taken for the road in one call, the description is for a curve of six degrees, whereas it should have been 16 degrees. It is claimed by appellee that this is a typographical error, and it is claimed that the balance of the description not only demonstrates that this is a typographical error but furnishes the data from which the greater curve of 16 degrees may be computed. The clause in the description referred to reads as follows: "Thence on a 6° curve to the left having a central angle 47°1' a distance of 293.9 feet." It is claimed that, with the central angle of 47°1' and the distance of 293.9 feet, the degree of the curve must be 16°. This contention is not answered by the appellants, and seems to be well taken. It is also claimed by the appellants in the case No. 6430 that there is an erroneous description in connection with the attempt to describe .02 of an acre in the N.W. corner of the S.W. quarter of the S.W. quarter of section 3. The portion that is sought to be taken is that triangular portion of the N.W. corner bounded by the quarter section lines converging toward the section corner, and a line parallel to the center line of the highway and distant 30 feet therefrom. The description requires that we proceed from the N.E. corner of the S.W. quarter of the S.W. quarter of section 3 "to a point 30 ft. distant from the survey line of the said South Lake Shore Extension road, thence in a northwesterly direction on a curve having a radius of 985 feet, being parallel and 30 ft. distant from the survey alignment curve at this place, to the north boundary line of said S.W. quarter of the S.W. quarter of Sec. 3; then east following the north boundary line of said S.W. quarter of the S.W. quarter of

Sec. 3, to the initial point and place of beginning."

There would seem no difficulty in ascertaining the location of this land if the center line of the proposed road and the N.E. corner of the S.W. quarter of the S.W. quarter are known. It is claimed, however, that in describing the land the method of locating the N.E. corner of the S.W. quarter of the S.W. quarter in the description in the complaint is entirely erroneous, and this seems to be admitted. But we see no reason for believing that the quarter section corner cannot be located on the ground and no reason is suggested why it cannot be located other than the claim, unsubstantiated by evidence, that there is no monument at that quarter section corner. However that may be, the petition discloses that the county engineer, as required by law, made a map of his survey and of this proposed right of way, and that this map is, and at all times during the condemnation proceedings was, one of the public records of the county of Chelan. It is alleged in the petition for condemnation filed in the superior court that the county engineer made an examination of the proposed road and a survey thereof and report thereof in writing to the board, and filed with said report a map of the proposed road as required by law, together with his field notes and profiles of such survey. If there is an erroneous call in the description of the land of Margaret Rosborough by reason of the typographical error in substituting the figure 6 for the figure 16 in describing the degree of the curve to the left, it could be readily corrected by inspection of the map, and the same may be said with reference to the alleged misdescription of the small tract of .02 of an acre proposed to be taken from appellant Wick. The map would undoubtedly disclose the error, if any, in the description. Moreover, even without the use of the map to aid in the description, it would be impossible to say, without evidence to that effect, that the description was not sufficiently definite to indicate the land proposed to be taken with reasonable certainty. We are satisfied that the descriptions complained of, supplemented by reference to the map, describe with reasonable certainty the property sought to be taken. 20 C. J. Eminent Domain, p. 957, and cases cited in note 1; Matter of Suburban Rapid Transit Co., 38 Hun (N. Y.) 553, 557; State v. Central N. J. Tel. Co., 53 N. J. Law, 341, 21 A. 460, 463, 11 L. R. A. 664; State v. Board of Com'rs of Polk County, 87 Minn. 325, 92 N. W. 216, 221, 60 L. R. A. 161; City of Winchester v. Ring, 312 Ill. 544, 144 N. E. 333, 337, 36 A. L. R. 520; State ex rel. Chelan Elec. Co. v. Superior Court, 142 Wash. 270, 283, 253 P. 115, 58 A. L. R. 779.

■ Appellants also complain that the decree of condemnation was made after a county warrant for the amount awarded by the jury had been deposited with the county clerk for them, but before the county clerk had cashed the warrant. It is claimed that this was error, and they cite in support of this contention State ex rel. Oregon-Washington W. S. Co. v. Hoquiam, 155 Wash. 678, 286 P. 286, 287 P. 670, where a check was deposited in lieu of money. But in Re Smith's Petition, 9 Wash. 85, 37 P. 311, 494, it was held that on award of damages for land appropriated payment by treasurer's warrant was sufficient. After referring to the fact that public corporations could not pay money in any other way than by warrant, the Supreme Court of Washington said (at page 91 of 9 Wash., 37 P. 311, 313, 494): "* * * We think compensation would be made within the meaning of the constitution by the issuance of a warrant in the ordinary way, if there were funds in the treasury out of which it would be paid upon presentation."

This case is decisive of the question. Moreover, we do not see how the appellants were injured where the record shows that warrants were promptly cashed and that the money is in the hands of the clerk at this time for them.

■ Defendants, 80 days after the entry of the decrees of condemnation, petitioned for leave to file motion for new trial, and claim that the refusal of the court to entertain the petition was error and abuse of discretion. The cases cited in support of this contention have no application. The rule of this court requires that application of motion for new trial shall be made within 42 days. The application herein was too late.

Decrees affirmed.