**NATIONAL SURETY CO. OF NEW YORK v. ULMEN.**

No. 7223.

Circuit Court of Appeals, Ninth Circuit.
·Dec. 11, 1933.

Rehearing Denied Jan. 24, 1934.

See, also, 3 F. Supp. 348; 4 F. Supp. 194.

John G. Brown, L. V. Ketter, and John C. Erickson, all of Helena, Mont., for appellant.

P. F. Leonard, of Miles City, Mont., Thomas M. Murn, of Terry, Mont., and Lowndes Maury, of Butte, Mont., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge.

SAWTELLE, Circuit Judge.

As part of a contract for the construction of a road for the state highway commission of the state of Montana, R. A. Schwieger, the contractor, who is not a party to this suit, made the following agreement:

"40. *Barricades, Danger, Warning and Detour Signs.* The contractor shall provide, erect and maintain all necessary barricades, suitable and sufficient red lights, warning and danger signals and signs, provide a sufficient number of watchmen and take all necessary precautions for the protection of the work and safety of the public. The Commission will provide and the Contractor shall erect and maintain acceptable and adequate detour signs at all closures and along the detour routes. All barricades and obstructions shall be illuminated at night, and all lights shall be kept burning from sunset until sunrise."

A demurrer to the original complaint having been sustained, the appellee filed an amended complaint, in which it was alleged that Schwieger failed to comply with the provisions of the foregoing paragraph of the contract, and that, as a result, the appellee, while driving along the highway being constructed by Schwieger, ran into a culvert and was injured.

The amended complaint also sets forth that the appellee filed suit in the district court for the county of Prairie, Mont., against Schwieger for the alleged injuries, and recovered judgment for $10,000 and costs.

The judgment was affirmed as against Schwieger by the Supreme Court of Montana. Ulmen v. Schwieger et al., 92 Mont. 331, 352, 356, 12 P.(2d) 856, 858.

Continuing, the appellee's amended complaint alleges that execution on the state judgment was duly issued and was returned wholly unsatisfied, and that Schwieger is insolvent.

The amended complaint also sets forth in extenso a "contract bond" executed in favor

of the state of Montana by Schwieger as principal and by the appellant as surety, for $21,-824.96. The condition of the bond is as follows:

"The condition of this obligation is such that if the above bonded 'Principal' as contractor shall in all respects comply with the terms of the contract, and his * * * obligations thereunder including the specifications therein referred to and made part thereof and such alterations as may be made in such specifications as therein provided for, and shall well and truly, and in a manner satisfactory to the State Highway Commission, complete the work contracted for, and shall save harmless the State of Montana, from any expense incurred through the failure of said contractor to complete the work as specified, or from any damages growing out of the carelessness of said contractor of [or] his, their or its servants, or from any liability for payment of wages due or material furnished said contractor, and shall well and truly pay each and every person furnishing material or performing labor in and about the construction of said work, every and all sum or sums of money due him, them or any of them, for all such labor and materials for which the contractor is liable, and also shall save and keep harmless the said State of Montana against and from all losses to it from any cause whatever including patent, trade-mark and copyright infringements, in the manner of constructing said section of work, then this obligation to be void or otherwise to be and remain in full force and virtue."

The amended complaint closes with a prayer for judgment against the appellant for $10,235, with interest and costs.

The appellant filed a motion to strike certain portions of the amended complaint, which motion was by the court denied. Thereafter the appellant filed a demurrer to the amended complaint, which demurrer the court overruled.

The appellant then filed an answer, to which the appellee filed a reply. The parties entered into a stipulation expressly waiving a jury and consenting to the admission in evidence of three exhibits, namely, the transcript in the case of Ulmen v. Schwieger et al., in the state Supreme Court, supra; copies of certain proceedings in the state court; and, finally, the contract between the Montana highway commission and Schwieger, with exhibits attached thereto.

The case was submitted to the court for judgment on the pleadings and the three exhibits. The lower court filed a written decision and gave a judgment in favor of the appellee for $12,170.69, with interest and costs.

From that judgment the present appeal is being prosecuted.

While there are three assignments of error, the appellant bottoms its appeal upon the proposition that the appellee's amended complaint fails to state a cause of action.

A liminal question, however, is presented by a motion to affirm the judgment or dismiss the appeal, filed by the appellee. The appellee bases his motion upon the ground that, though it appears from the record that evidence was introduced, there is not before us any statement of the case, statement of the evidence, or bill of exceptions, signed or settled or allowed by the presiding judge or by any other judge. The appellee further argues that, "there being evidence which is not before the appellate court, the presumption of the correctness of the trial court's judgment exists, and the presumption that the evidence, if before this court, could sustain the judgment, exists; and there exists the further presumption that the amended complaint, on which the case was tried, would be deemed further amended to conform to whatever the proof was."

The appellee's contentions, however, are contrary to views repeatedly expressed by the Supreme Court and by this court.

In Denver v. Home Savings Bank, 236 U. S. 101, 103, 104, 35 S. Ct. 265, 266, 59 L. Ed. 485, Mr. Justice Holmes said: "But no exception or bill of exceptions is necessary to open a question of law already apparent on the record, and there is nothing in the record that indicates a waiver of the defendant's rights. Therefore we must consider the merits of the defense. Nalle v. Oyster, 230 U. S. 165, 33 S. Ct. 1043, 57 L. Ed. 1439."

In Harris v. Moreland Motor Truck Co., 279 F. 542, 543, the late Judge Gilbert, of this court, expressed a similar view: "That there is no bill of exceptions in the record is not ground for dismissing an appeal or writ of error. There may still be questions in a case, not dependent upon a bill of exceptions, which may call for the judgment of an appellate court."

See, also, Rosborough v. Chelan County, Wash. (C. C. A. 9) 53 F.(2d) 198, 200.

Nor can we agree with the appellee's contention that, in the instant case, "the amended complaint * * * would be deemed further amended to conform to whatever the proof was," and that consequently, in the absence here of the evidence adduced in the court

below, it might be assumed that the complaint, thus "amended" by the evidence, was sufficient.

When a complaint wholly fails to state a cause of action, it cannot be cured by evidence, even though that evidence, had it been properly pleaded in the first place, might have put the complaint beyond the reach of a demurrer.

This court so held in the case of United States Fidelity & Guaranty Co. v. Whittaker, 8 F.(2d) 455, 457, certiorari denied 270 U. S. 653, 46 S. Ct. 352, 70 L. Ed. 782, in which the late Judge Rudkin said: "It may be urged that the defect in the complaint was cured by the findings of the court, but the rule is all but universal that, if a complaint wholly fails to state a cause of action, and more especially if it affirmatively shows that there is no cause of action, the defect is fatal, and the doctrine of aider by verdict or findings has no application."

See, also, Kennedy Lumber Co. v. Rickborn (C. C. A. 4) 40 F.(2d) 228, 231.

We advance, then, to the main question in this case, namely, whether or not the complaint stated a cause of action, and, as a corollary, whether or not the lower court erred in overruling the demurrer.

The appellee agrees that "all of the questions involved in the case are of local law," which "binds the national courts."

The theory upon which the appellee must rely for a recovery of damages in this suit is that, though he was not a nominal party either to the construction contract or the bond securing it, both contract and bond were executed for his benefit. That this is in fact the appellee's theory is evidenced from the following language in his brief: "Our state has paid what Schwieger and his bondsman regarded as a fair and reasonable price for putting up these barriers and detour signs, under paragraph 40. Our state did not get what it paid for. It paid for the safety of Ulmen. The barriers, etc., would be removed when the road was clear and accepted. Our state is cheated if the courts do not compensate the only party to be benefited by what the state paid for but did not get."

We therefore must examine "the local law" on contracts made for the benefit of third persons who are nominally strangers thereto.

Section 7472 of the Revised Codes of Montana 1921, is as follows: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."

Since the decisions of the State Supreme Court of Montana are binding upon this court in the construction of a Montana statute, we must have recourse to those decisions in arriving at an interpretation of section 7472.

At the outset, however, it must be observed that the Supreme Court of Montana had adopted the almost universal view that "Although there should be no favoritism or tenderness shown to a company organized to act as a surety for hire * * * the contract is subject to the same rules of construction as is any other contract, for the purpose of ascertaining and giving effect to the intention of the parties, which, of course, must control. * * *" Gary Hay & Grain Co., Inc., v. Carlson, 79 Mont. 111, 128, 255 P. 722, 727.

See, also, Swanberg v. National Surety Co., 86 Mont. 340, 352–353, 283 P. 761.

Another general rule as to suretyship, enunciated in the Gary Case, supra, is that "The obligation of the surety is * * * coextensive with and measured by the promises of the principal (the contractor here) to the obligee (the state) appearing in the contract, provided proper expressions are used in the bond, and the surety by the bond binds himself only to the performance of those acts which the principal promises to perform as a part of his contract." Page 123 of 79 Mont., 255 P. 722, 725.

See, also, Federal Surety Co. v. Basin Const. Co., 91 Mont. 114, 126, 5 P.(2d) 775.

In applying the Montana decisions to the instant case, it must be borne in mind that the construction contract which we are here considering does not bind the contractor Schwieger to pay for any injuries sustained by the public through his failure to erect or maintain the required detour signs. Consequently, the surety, the appellant herein, cannot be held bound to pay for such injuries, since, as we have just seen, the surety's obligation is "coextensive with and measured by the promises of the principal * * * to the obligee * * * appearing in the contract, * * * and the surety by the bond binds himself only to the performance of those acts which the principal promises to perform as a part of his contract."

In the recent case of Lanstrum et al. v. Zumwalt et al., 73 Mont. 502, 237 P. 205, 206, the highway construction contract provided that "No moneys payable under the contract or any part thereof, except the estimate for the first month or period, shall become due

and payable, if the committee so elects, until the contractor shall satisfy the said committee that he has fully settled or *paid* for all materials and equipment used in or upon the work and labor done in connection therewith. * * * " The surety bond recited that if the contractors "shall in all respects comply with the terms of the contract * * * and * * * their * * * obligations thereunder, * * * and shall well and truly, and in a manner satisfactory to the executive committee of the state highway commission, complete the work contracted for, and shall save harmless the state of Montana, from * * * any liability for payment of wages due or material furnished said contractor, and shall well and truly *pay* all and every person furnishing material or performing labor in and about the construction of said roadway, all and every sum or sums of money due him, them or any of them, for all such labor and materials for which the contractor is liable, * * * then this obligation to be void or otherwise to be and remain in full force and virtue." (Italics our own.)

The Lanstrum Case, supra, is relied upon by the appellee as one of the authorities for its contentions; yet the foregoing excerpt from that decision discloses that both the bond and the contract upon which it was founded specifically provided for *payment* by the contractor and, in his default, by his surety, of laborers and materialmen. In the instant case, however, as we have already pointed out, there is neither in the contract nor in the bond any provision for *payment*, either by the contractor or his surety, for any damages suffered by members of the public through the contractor's failure to erect and maintain the proper signs.

That such a provision for *payment* carried weight with the Supreme Court of Montana is evidenced by one of the closing paragraphs of the Lanstrum decision: "While there are some cases holding to the contrary, the weight of authority and better reasoning are to the effect that the surety bond of a contractor, conditioned as the one in question for the *payment* of all claims for material and labor furnished, inures to the benefit of a subcontractor who furnishes such labor and material, as well as to other materialmen and laborers." (Italics our own.)

An examination of the cases cited by the Supreme Court of Montana in support of the foregoing proposition likewise discloses that the decisions there relied upon placed similar stress upon the specific promise of the

contractor and the surety to *pay* the claims of laborers and materialmen.

The case of U. S. for Use of Hill v. American Surety Co., 200 U. S. 197, 200, 201, 26 S. Ct. 168, 169, 50 L. Ed. 437, involved a contract and bond for the construction of four observation towers for the United States. The act of Congress there cited, 28 Stat. 278, c. 280 (40 USCA § 270 note), specifically provides for the payment of all claims for labor and material; and both the contract and the bond in that case definitely stipulated for the payment of such claims. The Supreme Court there held that under such a contract and bond, the surety is liable for the payment to "persons supplying * * * labor and materials," even when such labor and materials are furnished to a subcontractor.

In Smith v. Mosier (C. C.) 169 F. 430, 432, 433, there was likewise a contract for the construction of federal buildings, in which the bond provided specifically for payment of labor and material claims, to be made by the contractor, and, in his default, by the surety. The Mosier suit was brought under the federal statute just referred to, and the decision followed the Hill Case, supra.

In Hipwell v. National Surety Co. of New York City, 130 Iowa, 656, 105 N. W. 318, 320, there was "an absolute promise on the part of the contractor to pay for all labor and materials." The question was whether the obligation assumed by the contractor to make such payment could, in a suit against a surety, avail a subcontractor furnishing labor and materials to the contractor. The Supreme Court of Iowa decided that question in the affirmative, and cited Green Bay Lumber Co. v. Ind. School District of Odebolt, 121 Iowa, 663, 97 N. W. 72. Commenting upon the latter case, the Supreme Court of Iowa, in the Hipwell decision, said: "The contract contained no promise to *pay* for labor or materials, and for this reason *alone* liability on the part of surety was denied." (Italics our own.)

Similarly, in the instant case, there is no direct promise to pay for personal injuries. There is, however, an express promise to pay for labor and materials, and the surety here does not argue to the contrary or dispute its liability for the payment of the same.

In the Green Bay Case, supra, the court said, at pages 72 and 73 of 97 N. W.: "It will be observed that the contract merely required Weaver to provide materials and perform the labor, but contains no stipulation in relation

to the payment therefor by him. * * * Neither the bond nor the contract in suit exacts of the contractor *payment* of labor or materials used in the building." (Italics our own.)

The doctrine announced in the Lanstrum Case, supra, was specifically approved by the Supreme Court of Montana in the Gary Case, supra. Because the latter decision constitutes a recent and comprehensive discussion of the entire subject by the Montana court, we quote from it at some length:

"Following the New York rule [Fosmire v. National Surety Co., 229 N. Y. 44, 127 N. E. 472] and certain decisions of this court, construing the above statute [section 7472, supra] to mean that the contract must be made 'in direct terms' for the benefit of the person suing, we held in Martin v. American Surety Co., 74 Mont. 43, 238 P. 877, that the rule applied to the surety bond under consideration in that case, and the bank now relies upon statements made therein to support its contention. As hereinafter shown, there is substantial conflict in the authorities as to the liability of a surety on a given set of facts, and, had the Martin Case come to us as one of original impression in this state, we might now feel bound to follow all that is said therein; but while the result reached may be upheld under an exception to the rule hereinafter stated, the broad declaration of the rule therein contained is unfortunate in the light of the fact that we had, a short time prior to this decision, committed ourselves to the rule that, under proper conditions of the bond and contract, laborers and materialmen could recover from the surety on the bond. We refer to Lanstrum v. Zumwalt et al., 73 Mont. 502, 237 P. 205, under which authority the plaintiff herein would be entitled to recover, provided it was entitled to sue in its own name, and the supplies described in the complaint come within the designation of 'materials' found in the contract and bond. Owing to the apparent conflict in these two decisions, it will now be necessary to go thoroughly into the question of the liability of sureties on bonds furnished in connection with contracts for the performance of public improvements. * * *

"It is, therefore, apparent that when neither the contract nor the bond contains a promise to *pay* laborers and materialmen, and the bond is conditioned only for the faithful performance of the work, there is no privity of contract entitling such claimants to sue the surety.

"Again, as in the absence of statutory authority no lien may be filed against public works, the obligee under such a bond cannot be injured by the failure of the contractor to pay for labor and material, and the governmental agency may or may not, at its pleasure, as a part of the contract exact a promise to make such *payments* [case cited]; if none is exacted or contained in the contract, but is incorporated in the bond of which the contract is a part, such condition of the bond is unenforceable by laborers and materialmen, as the bond, in this particular, is without consideration. [Cases cited.]

"Under this rule, the result reached in the Martin Case may be upheld, as the *contract* there under consideration contained no direct promise to *pay* for labor and material as a part of the contract.

"Where, however, the governmental agency sees fit to exact a promise to *pay* laborers and materialmen as a part of the contract and requires the contractor to furnish a bond, which, in addition to assuring the faithful performance of the work, promises that the contractor will *pay* for labor and material furnished for the prosecution of the work, it must be presumed that it thereby intended to benefit some one, and, as failure could not injure the state to whom the bond runs, the obligee could only be incidentally benefited. * * *

"It is said by the Supreme Court of the United States that a bond such as the one before us contained—'two entirely distinct and separate obligations: First, that (the contractor) should fulfill all the conditions and covenants of his contract, * * * and, second, promptly *make payment* to all persons supplying him labor and materials in the prosecution of the work. * * * This (latter) covenant, * * * is inserted for an entirely different purpose from that of securing to the government the performance of the contract for the construction of the building.' Inasmuch as there can be no lien filed against the construction: The government 'solely for the protection of the latter (laborers and materialmen) requires a covenant for the prompt payment of their claims, * * * the covenant is made solely for their benefit.' Guaranty Co. v. Pressed Brick Co., 191 U. S. 416, 48 L. Ed. 242, 24 S. Ct. 142. It is as though two separate bonds were given.

"Following this line of reasoning, the great weight of authority and, to our minds, the better reasoned cases, at least under such circumstances as are considered in the last paragraph, hold that, even though the dominant purpose of the bond is the indemnity of

the obligee (the state), when the contract contains a promise on the part of the contractor to *pay* for labor and material and the bond .contains a condition based on *such promise,* the intention of the parties and the duty toward such claimants resting upon the surety, either legal or equitable, will be drawn from the insertion of *those promises* in the instruments, privity of contract established between the surety and the class of persons mentioned in the instruments, and those falling within that class may sue directly in their own names and recover from the surety. [Many cases cited.]

"This is the rule adopted in this state in Lanstrum v. Zumwalt, except that the question of suing directly was not there involved, and we believe it is the only rule which may, under the circumstances of this .case, in justice and good conscience be applied.

"The contract and bond before us are identical with those considered in the Lanstrum Case, with the omission of the term 'equipment,' and we therefore hold that the complaint herein states a cause of action against the surety on such claims included therein as come within the meaning of the phrase 'labor and material' furnished under the contract; anything to the contrary appearing in Martin v. American Surety Co., above, is hereby expressly overruled." (Italics our own.)

■■ In view of the foregoing decisions of the Supreme Court of Montana, it is our view that, in that state, a third person who is a stranger to a contract or a bond thereunder, cannot recover from the surety even when the contract and bond, as here, contain some reference to him or to the class to which he belongs, unless there is a specific promise to *pay* such third person or such class, contained in the contract and bond. The mere statement of a *duty* to be discharged by the contractor, which may incidentally benefit a third party or class to which the latter belongs, without more, does not make the surety liable to such third person for the contractor's failure to discharge that duty.

Our reading of the Montana decisions is shared by the Circuit Court of Appeals for the Eighth Circuit. In the well-considered case of Minneapolis Steel & Machinery Co. v. Federal Surety Co. (C. C. A.) 34 F.(2d) 270, 271, not cited by counsel, the contract between the contractor and the state highway department of Montana contained no promise on the contractor's part "in so many words that he would pay for labor and material furnished," though "it did provide that the 'contractor shall furnish at his own expense all materials to be used on the project.' "

Quoting extensively from the Gary Case, supra, the Circuit Court of Appeals in the Minneapolis Case said: "The fact upon which the [Gary] case turned was that the contract contained a promise on the part of the contractor to *pay* for labor and materials; a promise which had been exacted by the state, without which promise in the contract third persons could not recover. The situation was contrasted with that discussed in Martin v. American Surety Co., 74 Mont. 43, 238 P. 877, in that in the latter case 'the contract there under consideration contained no direct promise to *pay* for labor and material as a part of the contract.' The contrast thus drawn by the Supreme Court of Montana between the case now relied on by the appellant and the Martin Case is significant. It clearly indicates that that court now holds only that a materialman as a third person can recover when there is, not only a promise in the contract to *pay* laborers and materialmen, but a direct promise, something more than a promise which may be held to be implied. A direct promise is necessary to satisfy the language of the statute that a contract which may be enforced by a third person must be one 'made expressly for the benefit of such third person.' "

Despite these unmistakable holdings of the Supreme Court of Montana, however, the appellee contends that the Schwieger Case, supra, definitely fixes the surety's liability in the instant controversy. Says the appellee:

"We do not claim that the decision in Ulmen v. Schwieger, the principal in the contract, and on the bond, is res adjudicata against the National Surety Company, but we do claim that the law settling the liability of Schwieger to Ulmen as growing out of a breach of his contract and not out of any question of common law negligence, is an adjudication of what the law is and that the liability of Schwieger to Ulmen for breach of the contract with the State Highway Commission, is a final determination of that law, both as to the surety and the principal. Otherwise, the words of the Supreme Court of Montana (binding on the Federal Courts in this situation) are meaningless. That court says that the liability of the surety is coextensive with the liability of the principal and that the bond and the contract are to be construed and considered together in determination of the surety's liability. * * *

"But, where the liability to Ulmen proceeds directly from his [Schwieger's] breach

of contract to the Highway Commission, and Schwieger is held by the Supreme Court of Montana, the final arbiter in all these matters, to be liable *expressly by reason of the breach of such contract*, then, the surety is in the same condition as Schwieger, except that in the Federal Courts, and in the majority of the State Courts, the surety is still at liberty to contest some facts," etc. (Italics our own.)

We have quoted the appellee's argument at this length because we believe the excerpt discloses his misreading of the Schwieger Case.

It is to be noted that the action there was a joint one against Schwieger and W. P. Roscoe, one of the subcontractors. The lower court found for the plaintiff, and the defendants appealed separately.

In its original decision, the Supreme Court of Montana found the evidence insufficient to warrant a judgment against the defendant Roscoe, and, as to him, the cause was reversed. On rehearing, the judgment of the lower court was affirmed as to the defendant Roscoe as well as to the defendant Schwieger. On Roscoe's motion for a rehearing, the majority of the court was of the opinion that the decision first promulgated was correct, and the judgment was sustained as to the defendant Schwieger and reversed as to the defendant Roscoe. Mr. Justice Angstman, who delivered the first opinion of the court, dissented from the final opinion, and was joined by Mr. Justice Ford.

In the first place, we think that the appellee is in error when he asserts that the Supreme Court held Schwieger liable to Ulmen "expressly by reason of the breach of [the] contract." The very first sentence of the opinion indicates that the action is one sounding in tort: "This is an action for damages for personal injuries."

Furthermore, the court's discussion, on pages 349, 350 of 92 Mont., 12 P.(2d) 856, 860, of the law both of primary and of contributory negligence, clearly suggests that the Supreme Court of Montana regarded—and we believe properly—the controversy as a common-law action ex delicto.

Again, the same suggestion is to be found in another expression in the decision, in connection with the discussion of another case on page 347 of 92 Mont., 12 P.(2d) 856, 859: "As stated, this duty [to the public] was imposed upon the highway commission, as well

as the contractor, in that case, by statute, but the rule is the same where the duty arises by common law."

Finally, nowhere in the Schwieger Case do we find any repudiation of the doctrine announced in the Lanstrum and the Gary Cases, supra, namely, that, in order that a third person may recover ex contractu either from the contractor or the surety, both contract and surety must contain *an express and direct promise to pay* such third person for any injury suffered as a result of the contractor's failure to keep the work safe for the public.

While the Schwieger decision contains certain references to section 40 of the contract, supra, these references are insufficient, in our opinion, to support the appellee's contention that the Montana Supreme Court regarded the suit there as anything more than an ordinary common-law tort action. In the absence of a more definite expression by the Montana Supreme Court, we are not prepared to read into the Schwieger decision so unusual a holding as that claimed for it by the appellee.

Accordingly, it is our view that, under the Montana statutes and decisions, the appellee is not entitled to recover from the appellant surety.

Judgment reversed, and case remanded, with directions to the District Court to sustain the demurrer, and to take such further proceedings as are not inconsistent with this opinion.

## On Petition for Rehearing.

### PER CURIAM.

Appellee having filed herein a formal waiver of any right to request the trial court or this court for leave to amend further his amended complaint, and requested, in the event his petition for a rehearing of this cause in this court be denied, that the judgment of this court be made final and the cause "remanded with directions to the District Court to dismiss the action at appellee's cost" so that appellee may apply to the Supreme Court of the United States for a writ of certiorari, it is ordered that the petition for rehearing be denied, the judgment of the District Court in this cause be reversed, and the cause remanded, with directions to dismiss the action as requested by appellee.

It is further ordered that the issuance of the mandate in the cause be stayed for a period of forty days from date.